Christopher LAUGHLIN *v.* STATE of Arkansas

CR 93-1101                                                      872 S.W.2d 848

Supreme Court of Arkansas
Opinion delivered March 28, 1994

*Tim R. Morris*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This case involves multiple convictions of rape and sexual abuse involving boys less than age 14. The appellant, Christopher Laughlin, received seven sentences, two of which were life terms. Laughlin appeals on several grounds: (1) one victim, L.M., who was age 12 at trial, gave testimony that was incompetent; (2) there was insufficient evidence to convict Laughlin for the rape of T.L. or the sexual solicitation of L.M.; (3) the trial court erred in not admitting testimony of T.L.'s sexual conduct with his brother; (4) the trial court erred in not

admitting testimony of J.M.'s sexual conduct with third parties; and (5) the trial court erred in not permitting cross examination of victim C.L. about prior criminal acts. The points on appeal are meritless, and we affirm.

The events in question took place between August 1, 1991, and April 16, 1992 in Rogers. Laughlin, who was age 32 at trial, had a house in the city. He would invite young boys to his house in the afternoons and often they would spend the night with him, with or without parental consent. At times, the parents of some of the boys used him as a babysitter. At his home the boys, who were all under age 14 at the time of the alleged offenses, testified that they played the video game, Nintendo, or watched television. They also testified that they drank alcoholic beverages, smoked cigarettes and marijuana, and read nudity magazines such as *Penthouse* and *Playboy*. A few of the boys would walk around the house naked and urinate off the back porch. On occasion, Laughlin would photograph the naked boys. From time to time Laughlin would masturbate with one of the boys or perform oral sex on a boy or have a boy perform oral sex on him. There was also testimony that he engaged in a form of anal sex with at least three boys, though there was no uncontradicted testimony of penetration.

The trial of this matter was held on February 2, 1993 and continued over six days. Laughlin was convicted of the following offenses with the following victims under age 14 and received these sentences:

| J.W. | Rape | Life Imprisonment |
|------|------|-------------------|
| S.L. | Rape | Life Imprisonment |
| T.L. | Rape | 40 years |
| J.M. | Rape | 40 years |
| K.W. | Sexual Abuse | 10 years |
| C.L. | Sexual Abuse | 10 years |
| L.M. | Sexual Solicitation of a child | 1 year in the county jail and a $1,000 fine. |

The life and 40-year sentences were to run consecutively; the

sexual abuse and sexual solicitation sentences were to run concurrently. Subsequent motions for amendment of judgment and a new trial were denied.

## I. INCOMPETENT TESTIMONY

Laughlin first contends that the testimony of L.M., who was the victim in the sexual solicitation conviction, was not competent. He specifically urges that L.M. had a faulty memory and could not accurately convey what he experienced.

We give this argument little credence. This court has repeatedly stated that the competency of a child, in a case involving a sexual offense, is a matter that is primarily for the trial court to decide, acknowledging that the judge is best able to assess the child's intelligence and understanding of the necessity for telling the truth. *Holloway* v. *State*, 312 Ark. 306, 849 S.W.2d 473 (1993); *Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986); *Needham* v. *State*, 215 Ark. 935, 224 S.W.2d 785 (1949). The trial court begins with the presumption that every person is competent to be a witness. Ark. R. Evid. 601; *Jackson* v. *State, supra*. Under the guidelines set forth by this court for determining the competency of a child witness, the challenging party bears the burden of establishing that the witness lacks at least one of the following: (1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the factfinder a reasonable statement of what was seen, felt, or heard. *Holloway* v. *State, supra, citing Logan* v. *State*, 299 Ark. 266, 773 S.W.2d 413 (1989).

In support of his contention, Laughlin points to instances in which L.M. demonstrated forgetfulness or contradicted another victim's testimony. He also relies on the fact that L.M. admitted that he did not tell the police officers the truth when he was first questioned.

Nevertheless, L.M., who was 12 at the time of trial, identified Laughlin and consistently testified that Laughlin touched his penis on at least two occasions. He answered questions clearly and gave sufficient detail of the acts committed by the appellant.

He also exhibited an ability to recall and give accurate impressions of reality, and there were no direct conflicts or irreconcilable differences in the victim's testimony with regard to the essential elements of the case. Further, his testimony was generally responsive to the questions. All of these factors are important in assessing competency. *See Jones* v. *State*, 300 Ark. 565, 780 S.W.2d 556 (1989); *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988); *Hoggard* v. *State*, 277 Ark. 117, 640 S.W.2d 102, *cert. denied*, 460 U.S. 1022 (1983).

■■ The fact that L.M.'s testimony may not have been a model of lucidity does not render him incompetent. *Holloway* v. *State, supra; Bowden* v. *State, supra.* Any variances in his testimony were for the jury to resolve. *Id.* We cannot say that the trial court abused its discretion by declaring the witness competent. *See Curtis* v. *State*, 301 Ark. 212, 783 S.W.2d 47 (1990).

### II. INSUFFICIENT EVIDENCE REGARDING T.L. AND L.M.

Laughlin next asserts that the evidence was insufficient to support the verdict for rape involving T.L. and sexual solicitation involving L.M.

■ We have recently described our analysis for determining whether the evidence is sufficient:

> The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, considering only that evidence which tends to support the verdict. *Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 477 (1992).

*Moore* v. *State*, 315 Ark. 131, 134, 864 S.W.2d 863, 865 (1993).

T.L., an eleven year old boy at the time of trial, gave precise testimony regarding the sexual conduct of Laughlin. He stated that he knew him and identified him in the courtroom. He

described the exterior and interior of Laughlin's house and the area surrounding the house. He further testified that he went to Laughlin's house on a Wednesday. There, he had a shower, and Laughlin took a towel and dried his "private off." In later testimony, T.L. stated that Laughlin touched his penis inside his underwear and hugged him. T.L. also performed oral sex on the appellant at his request. He then described in graphic detail how Laughlin performed oral sex on him on at least two separate occasions.

■ This testimony clearly qualifies as rape by deviate sexual behavior. Ark. Code Ann. §§ 5-14-101(1)(A), 5-14-103 (1987). The fact that L.M. remembers the toweling episode differently from T.L. is immaterial, since there is no requirement that T.L.'s testimony as a victim be corroborated. *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990). The testimony of a rape victim alone is sufficient to support a conviction. *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992); *White* v. *State*, 303 Ark. 30, 792 S.W.2d 867 (1990). And T.L.'s credibility, to the extent it was called into question, falls within the realm of the jury to assess. *Prater* v. *State*, 307 Ark. 180, 820 S.W.2d 429 (1991). Likewise, any inconsistencies between the testimony of the victims were for the jury to resolve. *White* v. *State, supra.* In sum, the evidence of rape which pertained to T.L. was sufficient.

■ With respect to the sufficiency of the evidence for the sexual solicitation of L.M., we hold that this issue was not preserved for appeal. Laughlin did request that the sexual abuse charge be reduced to sexual solicitation of a child. The trial court refused, but the jury then found him guilty of this lesser offense. However, Laughlin never moved for a directed verdict regarding the offense of sexual solicitation. We have held that the motion must be made in connection with the offense for which the defendant was convicted in order for the matter to be subject to our review. *Hickson* v. *State*, 312 Ark. 171, 847 S.W.2d 691 (1993). In the instant case, the directed verdict motion was made on the charge of sexual abuse but the jury in effect acquitted Laughlin of that charge by finding him guilty of the misdemeanor, sexual solicitation of a child. No motion for a directed verdict was made relating to sexual solicitation involving L.M. We decline to address the issue.

## III. RAPE SHIELD STATUTE

At trial, Laughlin asked the court to allow questioning of two victims, T.L. and J.M., about their sexual conduct with other males. In both instances, Laughlin maintained that the testimony which he sought to elicit would disclose that the other males were guilty of the acts for which he is charged.

In the case of T.L., Laughlin attempted to cross-examine him about the victim's sexual relationship with his brother. He argued that this was relevant to show that it was in fact the brother who molested T.L. and not the appellant. The prosecutor objected on the basis that this violated the Rape Shield Statute, Ark. Code Ann. § 16-42-101 (1987). An *in camera* hearing was held, following which the trial court ruled that the testimony of any sexual activity with the brother before the trial was irrelevant and should be excluded.[1]

██ Laughlin argues on appeal that the sexual conduct with the brother was relevant, but we agree with the trial court that it was not. The Rape Shield Statute broadly excludes evidence of specific instances of the victim's sexual conduct *prior to the trial. Slater* v. *State*, 310 Ark. 73, 832 S.W.2d 846 (1992). Under the statute, the trial court, upon proper motion, may engage in a balancing test to assess whether the probative value of the testimony sought outweighs the inflammatory nature of the testimony. Laughlin was unable to persuade the trial court that the testimony of sexual activity with the brother was relevant on the theory that T.L. had confused the brother and Laughlin in his mind. The trial court disallowed the inquiry, and we find no fault in its ruling.

Turning to the testimony of J.M., Laughlin asserts that testimony about J.M.'s homosexual encounters with other males bolsters Laughlin's defense that another individual molested J.M.,

---

[1]The State first objected to the absence of a written motion by defense counsel as required by § 16-42-101(c)(1) when the issue of T.L.'s prior sexual conduct was raised, and the trial court sustained the objection. Later, when the issue of T.L.'s specific sexual activity with his brother was raised, no similar objection by the State was made, and the State proceeded to participate in the rape shield hearing *in camera*. The State does not argue on appeal that Laughlin failed to file a written motion with respect to T.L.'s testimony concerning his brother, and, thus, that issue is not before us.

and not the appellant. He also insists that this testimony would be probative of J.M.'s lack of credibility as a witness. Again, these arguments lack merit.

What precipitated this issue was the following sidebar conference that occurred at trial:

> DEFENSE COUNSEL: Your Honor, for the record, and from the previous court rulings, I plan or plan to have the Court's permission to ask him if he has done any of these acts prior or after the incidents with other individuals besides Chris Laughlin.

> THE COURT: Do you have any basis for believing that he has?

> DEFENSE COUNSEL: The only basis I have, your Honor, is that when his father met Chris Laughlin there was conversation that he didn't want his son going over to the bowling alley because that's where all the homosexuals were and was concerned about the crowd and his son going over to the bowling alley. That's the only basis I have.

> PROSECUTOR: Your Honor, I have no basis — in fact, I asked [J.M.] about it Friday and he said that he's never been — nobody's ever done anything like this to him before.

> THE COURT: Well, your request is denied.

■ Admissibility of a victim's prior sexual conduct as an exception under the Rape Shield Statute must be determined pursuant to precise procedures codified at Ark. Code Ann. §§ 16-42-101(c)(1–3). Admissibility of prior sexual conduct is discretionary with the trial court. *Gaines v. State*, 313 Ark. 561, 855 S.W.2d 956 (1993); *Marcum v. State*, 299 Ark. 30, 771 S.W.2d 250 (1989). In order to set in motion a relevancy decision by the trial court regarding prior sexual conduct, § 16-42-101(c)(1) requires that the defendant file a written motion with the court before resting to the effect that the defendant desires to present evidence of the victim's past sexual activity.

■ Here no written motion was filed and no *in camera*

hearing was conducted as required by § 16-42-101(c). Only an objection was made by defense counsel, and that was denied. We conclude that the procedure followed was defective and insufficient to invoke a relevancy determination under the Rape Shield Statute. It is also highly questionable that the "basis" cited for the objection by the defense counsel qualifies as a proffer of proof. Indeed, the defense counsel made no reference to the Rape Shield Statute in making his objection. We hold that Laughlin did not follow the procedure for raising an exception to the Rape Shield Statute, and, accordingly, his argument on appeal is without merit. *See Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985).

For his last point of error, Laughlin argues that he was denied his right to effectively cross-examine C.L. when the court declined to allow inquiry into alleged misconduct of that witness. In support of this argument, he cites Rule 608(b) of the Arkansas Rules of Evidence which provides:

> (b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of [a] crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

We have interpreted Rule 608(b) to relate to inquiries into conduct on cross examination that are clearly probative of truthfulness or untruthfulness. *Dillon* v. *State*, 311 Ark. 529, 844 S.W.2d 944 (1993); *Parette* v. *State*, 301 Ark. 607, 786 S.W.2d 817 (1990). We have not interpreted the rule to permit cross examination into specific instances that are merely probative of dishonesty. *Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982).

At trial, Laughlin asked the court's indulgence to question C.L., age 9, about two specific instances of misconduct: (1) being detained by police while riding in a stolen car driven by his older

brother; and (2) being detained by police for riding stolen bicycles, again with his older brother. When arguing his position to the trial court, Laughlin explained that he wished to demonstrate the fact that criminal charges could be filed against C.L. and that this could be leverage against C.L. to testify against Laughlin which would diminish C.L.'s credibility.

The actions of C.L. involving the stolen bicycle and car which Laughlin seeks to probe are indicative of dishonest acts but do not necessarily evidence a proclivity for untruthfulness. This court has stated that "while an absence of respect for the property rights of others is an undesirable trait, it does not directly indicate an impairment of the trait of truthfulness." *Rhodes* v. *State*, 276 Ark. at 209, 634 S.W.2d at 111. We follow our reasoning in the *Rhodes* decision and hold that the specific incidents of alleged theft perpetrated by C.L. and his brother do not automatically translate into examples of untruthfulness. The trial court, accordingly, did not err in disallowing further questioning on these circumstances. *See also Hamm* v. *State*, 301 Ark. 154, 782 S.W.2d 577 (1990).

The record has been examined in accordance with Supreme Court Rule 4-3(h) for additional reversible error, and none has been found.

Affirmed.

CORBIN, J., not participating.