Benny Ray McDOUGAL *v.* STATE of Arkansas

CR 95-1124          922 S.W.2d 323

Supreme Court of Arkansas
Opinion delivered May 13, 1996
[Petition for rehearing denied June 10, 1996.*]

---

*DUDLEY, J., not participating.

*Ogles Law Firm*, by: *John Ogles*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen. and Sr. Appellate Advocate, for appellee.

BRADLEY D. JESSON, Chief Justice. The appellant was convicted of operating a gambling house in violation of Ark. Code Ann. § 5-66-103 (Repl. 1993). He received three years probation and was sentenced to thirty days in the White County Detention Center. We affirm his conviction.

The appellant operated an establishment in White County known as Benny's Barn. Patrons paid membership fees and admittance fees in order to attend the cockfights which took place on the premises. In December of 1994, the White County Sheriff's office began an undercover investigation of the operation. The Sheriff enlisted the help of officers from the Pulaski County Sheriff's Department. On December 3, 1994, Pulaski County Detectives Lane and Doty went, undercover, to Benny's Barn. They paid their membership fee and admittance charge and were "buzzed in" through an electronic door. Once inside they observed pit areas, where the cockfights took place, and bleachers along the side of the pits. Before a fight would begin, many of those in the bleachers would engage in loud, open betting, shouting their wagers, such as "five on the red" or "I've got ten dollars on that." According to the officers, as many as half of those present were betting, and the wagering was so loud it could not be missed by anyone in the building. Detective Lane said that, at one point during the evening when they could plainly hear betting taking place, the appellant was sitting two seats in front of them in the bleachers.

Detective Lane further observed that one of the facility's referees, Mr. Tharp, called out at least two times before a fight, "Place

your bets." Detective Doty heard another employee say, "Make sure you get your bets down." Finally, the detectives saw the appellant exchange money with a patron in a manner which they characterized as placing a bet. Detective Lane testified that he actually overheard the appellant making the bet and paying off after he lost. One of the chicken handlers, Russell Rice, also said he saw the appellant exchanging money with someone.

On December 17, 1994, Detective Lane, along with another officer and DEA Special Agent Karen Fehrenbach, returned to Benny's Barn. When they were permitted entry through the electronic door, Detective Lane asked why such a door was needed. An employee said, "to keep the Sheriff's Department out." Otherwise the visit on the 17th revealed the same loud, open betting which had been observed previously.

As a result of the undercover investigation, several arrests were made. The appellant and one of his employees were charged with operating a gambling house. Three others were charged with cruelty to animals. All five were tried together in a non-jury proceeding.[1]

In the case against the appellant, the State introduced the abovementioned testimony of Detectives Lane and Doty, Special Agent Fehrenbach, and Russell Rice. In addition, an audio tape was introduced into evidence. On the December 3 visit, Detective Doty made an unsuccessful attempt to surreptitiously videotape the activities inside Benny's Barn. However, the machine malfunctioned, leaving only a poor-quality audio tape. The judge listened to the tape and said he could clearly hear four occasions on which a person was attempting to make a bet. However, he noted that there was a lot of activity on the tape that could not be understood.

The appellant argued to the court that the State's evidence was insufficient to convict him of operating a gambling house. He also argued that Arkansas's gambling house statute was unconstitutionally overbroad. Finally, he alleged that Ark. Code Ann. § 5-66-101 (Repl. 1993), a statute that requires judges to construe gaming statutes liberally, violated the rule of strict construction of criminal

---

[1] The record reveals that the appellant's employee was acquitted of operating a gambling house, and that the other three defendants were convicted of cruelty to animals. Their convictions are not challenged in this appeal.

laws. The judge ruled against the appellant in every instance, and this appeal followed.

### Sufficiency of the Evidence

■ When reviewing the sufficiency of the evidence to support a criminal conviction, our inquiry is whether the conviction is supported by substantial evidence. Substantial evidence is of sufficient force and character to compel a conclusion one way or another, forcing the mind to pass beyond speculation and conjecture. We view the evidence in a light most favorable to the trial judge's decision. *Witherspoon v. State*, 322 Ark. 376, 909 S.W.2d 314 (1995); *Igwe v. State*, 312 Ark. 220, 849 S.W.2d 462 (1993).

The appellant was convicted under Ark. Code Ann. § 5-66-103(a) (Repl. 1993), which reads as follows:

> Every person who shall keep, conduct, or operate, or who shall be interested, directly or indirectly, in keeping, conducting, or operating any gambling house or place where gambling is carried on, or who shall set up, keep, or exhibit or cause to be set up, kept, or exhibited or assist in keeping, setting up, or exhibiting any gambling device, or who shall be interested directly or indirectly in running any gambling house or in setting up and exhibiting any gambling device or devices, either by furnishing money, or other articles for the purpose of carrying on any gambling house shall be deemed guilty of a felony and on conviction shall be confined in the Department of Correction for not less than one (1) year nor more than three (3) years.

■■ The essence of the offense set out in § 5-66-103 is the keeping or maintaining of a house where those who wish to gamble may do so. *Sorrentino v. State*, 214 Ark. 115, 214 S.W.2d 517 (1948). In this case, there is substantial evidence that the appellant was maintaining a place where gambling took place and that he was well aware of the gambling. The undercover officers testified that the betting among patrons was loud enough and open enough that it would be virtually impossible not to be aware of it. They also testified that employees of Benny's Barn made reference to patrons' placing their bets. The trial judge said he could hear open betting on the audiotape. Finally, Detective Lane offered unequivocal testimony that he observed the appellant himself engaged in wagering.

■■ The appellant argues that, 1) no witness could say with certainty that he had seen the appellant himself wagering on the cockfights, 2) some witnesses testified that no gambling took place in Benny's Barn, and 3) the appellant had a rule against gambling as evidenced by the many signs posted throughout the establishment. First, Detective Lane *did* testify with certainty that he had seen the appellant making a bet with another man. In any event, it is not necessary that the State prove the appellant actually engaged in wagering. *Liberto v. State*, 248 Ark. 350, 451 S.W.2d 464 (1970). Second, the fact that some witnesses testified that no gambling occurred does not render the evidence insufficient; other witnesses testified with equal force that gambling *did* occur on the premises. We view the evidence in a light most favorable to support the conviction. *Igwe v. State, supra*. Finally, the presence of "No Gambling" signs, of which as many as twenty-five were observed by Detective Lane, was characterized by the trial judge as a "hollow gesture" on the part of the appellant. In light of the evidence of loud, open gambling on the premises, we cannot say that the trial judge was incorrect in his assessment.

Based upon the foregoing, we hold that the evidence was sufficient to support the conviction.

### Constitutionality of Ark. Code Ann. § 5-66-103

■ A statute is presumed constitutional, and all doubts are resolved in favor of constitutionality. The party challenging the statute has the burden of proof. *Carney v. State*, 305 Ark. 431, 808 S.W.2d 755 (1991).

The appellant contends that § 5-66-103 is unconstitutionally overbroad because its wording is so inclusive that it may criminalize perfectly innocent conduct. One example he offers is his claim that, if a person hosted a Super Bowl party at his home and gambling took place among those in attendance, the homeowner could be convicted of operating a gambling house.

■ We addressed a similar challenge in *State v. Torres*, 309 Ark. 422, 831 S.W.2d 903 (1992). In that case, we held that § 5-66-103 was not void for vagueness. However, we did not reach the overbreadth argument. The two constitutional challenges are often confused and do tend to overlap. An overbroad statute is one that is designed to punish conduct which the state may rightfully punish,

but which includes within its sweep constitutionally protected conduct. 4 R. Rotunda & J. Novak, *Treatise on Constitutional Law*, § 20.8 (2d ed. 1992). By contrast, a statute is void for vagueness if its language is so indefinite that the line between condemned conduct and innocent conduct becomes a matter of guesswork. L. Tribe, *American Constitutional Law*, § 12-31 (2d ed. 1988).

The appellant's overbreadth challenge fails for two reasons. First, even though § 5-66-103 itself imposes no requirement that the offender have a culpable mental state, Ark. Code Ann. § 5-2-203(b) (Repl. 1993) grafts such a requirement onto the statute:

> if the statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required, and is established only if a person acts purposely, knowingly or recklessly.

■ When the mental culpability requirement is read into § 5-66-103, it is clear that a person must act purposely, knowingly or recklessly in order to violate the statute. That being the case, the overbreadth of which the appellant complains does not exist.

■ The second reason the appellant's argument must fail is that, since the statute was properly applied to his conduct, he cannot challenge the statute on the ground that it may conceivably be applied in hypothetical situations not before the court. An appellant may challenge a law as being *facially* invalid only if he shows that the application of the law will restrict First Amendment rights. *United States* v. *Salerno*, 481 U.S. 739 (1986); *New York* v. *Ferber*, 458 U.S. 747 (1982). *See also*, R. Rotunda & J. Nowak, *Treatise on Constitutional Law*, *supra.* Appellant has made no such showing in this case.

### Validity of Ark. Code Ann. § 5-66-101

This statute was also challenged in the *Torres* case. It reads as follows:

> The judges of the several courts in this state shall, in their construction of the statutes prohibiting gaming, construe the same liberally, with a view of preventing persons from evading the penalty of the law by changing of the name or the invention of new names or devices that now are, or may hereafter be, brought into practice, in any and in all kinds of

gaming, and all general terms of descriptions shall be so construed as to have effect, and include all such games and devices as are not specially named; and in all cases, when construction is necessary, it shall be in favor of the prohibition and against the offender.

The appellant claims that this statute is in derogation of our established principle that penal statutes are to be strictly construed. In *Torres*, we said that, having found no ambiguity in § 5-66-103, we would not address the appellant's challenge to § 5-66-101. In this case, we decline to address the issue because the record reflects that the trial judge did not utilize the statute. In ruling on the appellant's argument, the judge stated that the statute had no application to this case.

Affirmed.

DUDLEY, J., not participating.