James Doyle BAILEY *v.* STATE of Arkansas

CR 97-1442 972 S.W.2d 239

Supreme Court of Arkansas
Opinion delivered July 9, 1998

*Etoch Law Firm*, by: *Louis A. Etoch*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly S. Terry*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, James Doyle Bailey, was convicted in Monroe County Circuit Court of

resisting arrest, disorderly conduct, and public intoxication, and was ordered to pay fines totaling $625.00. Among Mr. Bailey's four arguments on appeal is his contention that the disorderly conduct statute, Ark. Code Ann. § 5-71-207 (Repl. 1997), is unconstitutional as written and as applied to him under the First Amendment of the United States Constitution. Thus, our jurisdiction is pursuant to Ark. Sup. Ct. 1-2(b)(3) and (b)(6) (1998). We find no merit to Mr. Bailey's allegations of error and affirm the trial court's judgment.

At approximately 12:30 a.m. on October 27, 1996, Mr. Bailey and his girlfriend, Brenda Brock, were involved in a one-vehicle accident near Mr. Bailey's apartment in Brinkley. Shortly after the accident, Brinkley Police Officer Bill Geater went to Mr. Bailey's residence to investigate a report of the wreck. He observed a damaged vehicle in the driveway and found Mr. Bailey sitting outside on the concrete steps leading up to the front porch of his apartment. Ms. Brock emerged from the residence at Officer Geater's request, but went back inside when Arkansas State Trooper Ricky Newton arrived. Officer Geater followed her inside and brought her back out. According to Officer Geater, "Mr. Bailey was cussing me at this time. He was on the front porch. He mainly called me MF or SB. I asked him to be quiet." In the meantime, Brinkley Police Officer Ed Randle had arrived. Officer Randle testified that, when he approached the steps, Mr. Bailey

> stood up and grabbed me by the upper part of my arm, the biceps. Mr. Bailey said some profane things to me and told me to leave his friend alone. I told him to sit down and be quiet. He did sit down and be quiet.

Trooper Newton testified that the officers were tending to Ms. Brock when Mr. Bailey "starting getting belligerent." Mr. Bailey "first said something in the form of 'You all get the hell away from here and leave us alone.'" Trooper Newton, who observed that Mr. Bailey was intoxicated, responded by asking him to quiet down.

The officers took Ms. Brock to the street in front of Trooper Newton's patrol car to examine her. According to Officer Geater,

Mr. Bailey remained on the porch, but "continu[ed] to use profanity at us. I told him several times to be quiet and let us conduct our investigation." Trooper Newton testified that Mr. Bailey stated at this point, "Fuck you, nigger, and fuck you, too." Officer Randle testified that Mr. Bailey became "very loud and profane with his language." It was Officer Geater's testimony that, after telling him "eight or ten times to quiet down," he walked up to Mr. Bailey and told him that he was under arrest for disorderly conduct and public intoxication.

Officer Geater instructed Mr. Bailey, who was sitting on the front steps, to stand up and put his hands on the banister. It was Officer Geater's intention to place handcuffs on Mr. Bailey and pat him down to check for weapons. However, Mr. Bailey, who continued to direct profanity at the officers, "stiffened up and decided he wasn't going to be cuffed." Trooper Newton, who was dealing with Ms. Brock, came over to assist Officer Geater. According to Trooper Newton, Mr. Bailey had his right arm "in firm control where Officer Geater could not budge it." Trooper Newton then put Mr. Bailey's left arm in an arm lock behind his back. When Officer Geater still could not get Mr. Bailey's right arm behind his back, Trooper Newton told Officer Geater that they needed to "take him to the ground." Officer Randle then came over, held Mr. Bailey from behind, and used his foot to take him off his feet as the other two officers held his arms.

All four men fell to the ground, and Mr. Bailey still continued to struggle. He began to swing at the officers with his arms. At times, he would put his arms underneath his chest so that the officers could not handcuff them. When the officers were still unable to handcuff Mr. Bailey, Trooper Newton instructed the other two officers to "roll off" so that he could spray him with pepper spray. Trooper Newton used the pepper spray, and Officer Randle sprayed Mr. Bailey with a chemical foam. Neither chemical had effect on Mr. Bailey, who simply "shook his head like that and looked at us and said fuck you and came off the ground again." After the officers put Mr. Bailey on the ground once more, he "was just flailing away with his arms." This time, Trooper Newton used his police baton to try to pry Mr. Bailey's right arm free so that it could be handcuffed. After Mr. Bailey's

right arm was finally secured, he was still "flaying away with his left arm trying to get back up." After "a lot of wrestling and rolling around on the ground," according to Officer Geater, they were finally able to handcuff Mr. Bailey.

The struggle continued, however, even after the officers placed the handcuffs on Mr. Bailey. When they tried to place him in the patrol car, he stood outside the door and refused to get in the car. After Officers Geater and Randle physically placed Mr. Bailey in the car, he attempted to kick the officers. After being transported to the Brinkley Police Department, Mr. Bailey was interviewed. A videotape of the exchange depicts Mr. Bailey shouting profanities at the officers, using such words as "motherfucker," "asshole," and "nigger."

Mr. Bailey was charged by felony information with three counts of second-degree battery against a police officer, resisting arrest, interference with a law enforcement officer, disorderly conduct, and public intoxication. Prior to trial, the trial court dismissed two of the battery charges and the interference-with-a-law-enforcement-officer charge. Following a jury trial, the jury found Mr. Bailey not guilty of the remaining battery charge, but found him guilty of the resisting arrest, disorderly conduct, and public intoxication charges, for which the trial court imposed fines of $500.00, $75.00, and $50.00, respectively. He now appeals these convictions.

### I. Sufficiency of the evidence — resisting arrest and public intoxication

For his first allegation of error, Mr. Bailey essentially claims that the trial court should have directed a verdict on the resisting-arrest and public-intoxication charges because the State's evidence was insufficient to support these claims. We will review the State's evidence as it relates to each of these offenses under the following standards:

> Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Johnson v. State*, 326 Ark. 3, 929 S.W.2d 707 (1996); *Penn v. State*, 319 Ark. 739, 894 S.W.2d 597 (1995). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable

> to the state. *Dixon v. State*, 310 Ark. 460, 470, 839 S.W.2d 173 (1992). Evidence is sufficient to support a conviction if the trier of fact can reach a conclusion without having to resort to speculation or conjecture. Id. Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.* Only evidence supporting the verdict will be considered. *Moore v. State*, 315 Ark. 131, 864 S.W.2d 863 (1993).

*Lloyd v. State*, 332 Ark. 1, 5, 962 S.W.2d 365 (1998); *Green v. State*, 330 Ark. 458, 466-7, 956 S.W.2d 849 (1997); *McGehee v. State*, 328 Ark. 404, 410, 943 S.W.2d 585 (1997).

■ ■ Mr. Bailey claims that his resisting–arrest conviction cannot stand because the State failed to prove that he used physical force against the officers. The resisting–arrest statute is found at Ark. Code Ann. § 5-54-103 (Repl. 1997), and states in part that:

> (a)(1) A person commits the offense of resisting arrest if he knowingly resists a person known by him to be a law enforcement officer effecting an arrest;
>
> (2) "Resists", as used in this subsection, means *using or threatening to use* physical force or any other means that creates a substantial risk of physical injury to any person. (Emphasis added.)

According to the plain language of subsection (a)(2), the actual use of physical force is only one way to "resist" under the statute. This subsection also provides that a person can threaten to use physical force and thus satisfy the "resist" element. Thus, Mr. Bailey's contention that the State was required to prove that he actually used physical force is unpersuasive. While Mr. Bailey never punched or struck any of the officers, there was ample evidence indicating that he continuously struggled with them when they attempted to place handcuffs on him. He repeatedly swung at the officers and attempted to kick two of them even after he was finally handcuffed and placed in the patrol car. Under these circumstances, there was substantial evidence supporting Mr. Bailey's conviction of resisting arrest.

■ Regarding the public–intoxication charge, Mr. Bailey argues that the State failed to prove that he was intoxicated. Particularly, he asserts that the officers at the scene never administered

or attempted to administer a test to confirm that he was intoxicated. The statute at issue, Ark. Code Ann. § 5-71-212 (Repl. 1997), provides in relevant part that:

> (a) A person commits the offense of public intoxication if he appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under circumstances such that he is likely to endanger himself or other persons or property, or that he unreasonably annoys persons in his vicinity.

At trial, Mr. Bailey admitted that he had two drinks at a private club on the night of his arrest. Officer Geater testified that he thought Mr. Bailey was "extremely intoxicated" because he smelled of alcohol, had glassy, blurry, and watery eyes, and because of the way that he was acting. The officer's opinion testimony was admissible to prove intoxication. *Mace v. State*, 328 Ark. 536, 540, 944 S.W.2d 830 (1997). In light of the testimony presented, there was substantial evidence supporting Mr. Bailey's conviction for public intoxication. *See, e.g., State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996).

## II. Constitutionality of Ark. Code Ann. § 5-71-207 (Repl. 1997)

Next, Mr. Bailey contends that his conviction for disorderly conduct cannot stand because the statute under which he was convicted, Ark. Code Ann. § 5-71-207 (Repl. 1997), is unconstitutionally overbroad both as written and as applied to him. At the conclusion of all the evidence, the jury was instructed on the first three subsections of § 5-71-207, which provides:

> (a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk thereof, he:
>
> (1) Engages in fighting or in violent, threatening, or tumultuous behavior; or
>
> (2) Makes unreasonable or excessive noise; or
>
> (3) In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response . . .

The jury did not identify which subsection(s) it found to have been violated. However, it is apparent in his brief that Mr. Bailey is challenging subsection (a)(3), as he maintains that the disorderly conduct law violates his "First Amendment right to be critical of the governmental officers for conduct he believed to be inappropriate."

■ ■ Our review of challenges to the constitutionality of statutes begins with the principle that statutes are presumed to be constitutional. *Arkansas Game & Fish Comm'n v. Murders*, 327 Ark. 426, 429, 938 S.W.2d 854 (1997). The burden of proving a statute unconstitutional, we have said, is upon the party challenging it. *Id.* If it is possible to construe a statute as constitutional, we must do so. *Id.* An overbroad statute is one that is designed to punish conduct which the state may rightfully punish, but which includes within its sweep constitutionally protected conduct. *Id.*; *McDougal v. State*, 324 Ark. 354, 359-360, 922 S.W.2d 323 (1996)(*citing* 4 R. Rotunda & J. Novak, *Treatise on Constitutional Law*, § 20.8 (2d ed. 1992)).

■ ■ In addressing Mr. Bailey's facial challenge of § 5-71-207, our first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Houston v. Hill*, 482 U.S. 451, 458-9 (1987)(citations omitted). This requirement that the overbreadth be substantial arises from the United States Supreme Court's recognition that the application of the overbreadth doctrine is "manifestly, strong medicine," *Broaderick v. Oklahoma*, 413 U.S. 601, 613 (1973), and that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). *See also Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987). The doctrine of facial overbreadth should not be invoked "when a limiting construction has been or could be placed on the challenged statute." *Broaderick v. Oklahoma, supra.* "[T]he right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). In *Chaplinsky*, the United States Supreme Court explained that:

> [t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*Id.* at 571–572.

In support of his argument that the disorderly conduct statute is facially overbroad, Mr. Bailey relies on *Houston v. Hill, supra,* in which the United States Supreme Court struck down as facially overbroad a city ordinance that made it "unlawful for any person to . . . in any manner oppose, molest, abuse, or interrupt any policeman in the execution of his duty." 482 U.S. at 461. The First Amendment, the Court said, "protects a significant amount of verbal criticism and challenge directed at police officers." *Id.* The Court further explained that it had invalidated laws that proscribe certain kinds of speech directed at police officers where the ordinance punishes spoken words and is not limited to "fighting words." *Id.* at 462.

■ Subsection (a)(3) of the disorderly conduct statute proscribes speech and gestures, spoken in a public place, that are "abusive or obscene" and "likely to provoke a violent or disorderly response" from the listener. It requires "no great leap" for us to interpret the "likely to provoke a violent or disorderly response" language in subsection (a)(3) as incorporating the "fighting words" rule in *Chaplinsky v. New Hampshire, supra. See United Food & Commercial Workers International Union v. IBP, Inc.,* 857 F.2d 434 (8th Cir. 1988). Because subsection (a)(3) proscribes only "fighting words," this provision is distinguishable from the law struck down in *Houston v. Hill, supra.*

■ In any event, Mr. Bailey's argument must inevitably fail because the disorderly conduct statute was properly applied to his conduct. While he refers us to his use of the words, "motherfucker," "asshole," and "nigger" during his taped interview at the police station, it was Mr. Bailey's conduct at his residence that prompted his arrest for disorderly conduct. As Officer Geater testified, Mr. Bailey began to curse him, calling him "MF"

or "SB" when he brought Ms. Brock out of the residence. At one point, according to Trooper Newton, Mr. Bailey stated, "Fuck you, nigger, and fuck you, too." When Officer Randle arrived at the scene Mr. Bailey

> *stood up and grabbed me by the upper part of my arm, the biceps.* Mr. Bailey said some profane things to me and told me to leave his friend alone. I told him to sit down and be quiet. He did sit down and be quiet. (Emphasis added.)

Not only did Mr. Bailey's direct various fighting words to the officers, when considering his surrounding conduct, such as standing up and grabbing Officer Randle's arm, we conclude that he used these words "in a manner likely to provoke a violent or disorderly response" under § 5-71-207(a)(3). Moreover, his act of standing up and grabbing Officer Randle's arm in and of itself supported a conviction under subsection (a)(1), as this conduct constituted "threatening behavior."

█ In addition, Mr. Bailey cannot challenge § 5-71-207 on the ground that it may conceivably be applied in hypothetical situations not before the court. *McDougal v. State*, 324 Ark. at 360. An appellant may challenge a law as being facially invalid only if he shows that the application of the law will restrict First Amendment rights. *Id.* (*citing United States v. Salerno*, 481 U.S. 739 (1986), *New York v. Ferber*, 458 U.S. 747 (1982), and R. Rotunda & J. Nowak, *Treatise on Constitutional Law, supra*). Mr. Bailey has made no such showing in this case. As the United States Supreme Court has held in *United States v. Salerno*, supra, "the mere fact that [a legislative] Act might operate unconstitutionally under some conceivable circumstances is insufficient to render it wholly invalid." 481 U.S. at 745. For these reasons, we reject Mr. Bailey's overbreadth challenge.

### III. Jury instructions

██ █ Mr. Bailey further argues that the trial court erred in refusing to give the jury the following three instructions that he proffered:

FREEDOM OF SPEECH

The free communication of thoughts and opinions is one of the invaluable rights of man and shall not be abridged.

Authority: Constitution of the State of Arkansas, Article 2, Sect. 6 and the United States Constitution, Amendment One.

Defendant's Proffered Jury Instruction No.1.

. . . .

FREEDOM OF SPEECH

The free communication of thoughts and opinions is one of the invaluable rights of man.

Authority: Constitution of the State of Arkansas, Article 2, Sect. 6.

Defendant's Proffered Jury Instruction No. 2.

. . . .

FREEDOM OF SPEECH

An individual may not be punished for words or conduct that are simply annoying or offensive.

Authority: *City of Houston, Texas v. Hill*, 482 U.S. 451 (1987).

Defendant's Proffered Jury Instruction No. 3.

On appeal, Mr. Bailey cites no case law or other authority to support his contention that the trial court erred in refusing to give these instructions to the jury. We have often stated that we will not consider an argument where the appellant presents no citation to authority or makes no convincing argument in support of his allegation of error, and it is not apparent without further research that the argument is well-taken. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996). Mr. Bailey argues that the trial court's rejection of his proffered instructions prejudiced him "because the jury was not allowed the option of finding that [his] criticism of the government police officers was constitutionally protected speech." However, constitutional issues are questions of law for the court to resolve and not issues of fact to be submitted to the jury. *See, e.g., Swindler v. State*, 267 Ark. 418, 433, 592 S.W.2d

91 (1979), *cert. denied*, 449 U.S. 1057 (1980). Accordingly, the trial court did not err in refusing to give Mr. Bailey's proffered instructions to the jury.

### IV. Cross-Examination of Trooper Newton

 ██ Finally, Mr. Bailey contends that he was denied his right to effectively cross-examine Trooper Newton. Particularly, the trial court refused to allow Mr. Bailey to ask Trooper Newton whether he was transferred to Monroe County because he had left the scene of an accident involving his girlfriend. The relevant evidentiary rule at issue, A.R.E. 608(b), provides in pertinent part that:

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . .

We have interpreted this rule to permit inquiries into conduct on cross-examination that are clearly probative of truthfulness or untruthfulness, but to disallow cross-examination into specific instances that are merely probative of dishonesty. *Laughlin v. State*, 316 Ark. 489, 498, 872 S.W.2d 848 (1994). Specifically, we have adopted a three-part test of admissibility: (1) the question must be asked in good faith; (2) the probative value must outweigh its prejudicial effect; and (3) the prior conduct must relate to the witness's truthfulness. *Mackey v. State*, 279 Ark. 307, 316, 651 S.W.2d 82 (1983). This test must be considered along with our settled law that evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. *White v. State*, 330 Ark. 813, 819, 958 S.W.2d 519 (1997).

 In the present case, we cannot say that the specific incident regarding Trooper Newton's transfer because he left the scene of an accident involving his girlfriend automatically translates into an example of untruthfulness. In fact, Mr. Bailey does

not allege that his questions were probative of Trooper Newton's truthfulness. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to allow Mr. Bailey to pursue this line of questioning.

Based on the foregoing, we affirm the trial court's judgment.

NEWBERN and IMBER, JJ., concur in part, dissent in part.

DAVID NEWBERN, Justice, concurring in part and dissenting in part. As applied in this case, Ark. Code Ann. § 5-71-207 (Repl. 1997) violates the First Amendment to the Constitution of the United States. Mr. Bailey's conviction of disorderly conduct should be reversed. The majority correctly rejects Mr. Bailey's challenge to the sufficiency of the evidence supporting his resisting-arrest and public-intoxication convictions and rejects his arguments concerning jury instructions and the cross-examination of Trooper Newton.

The jury received instructions on the disorderly conduct charge based upon the following three subsections of § 5-71-207:

> (a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating the risk thereof, he:
>
> > (1) Engages in fighting or in violent, threatening, or tumultous behavior; or
> >
> > (2) Makes unreasonable or excessive noise; or
> >
> > (3) In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response; . . . .

The verdict finding Mr. Bailey guilty of disorderly conduct did not specify the statutory ground or grounds on which it rested. We therefore can affirm Mr. Bailey's disorderly conduct conviction only if *each* subsection is constitutional "on its face" and "as applied." If, "in light of the instructions given by the trial judge, the jury could have rested its verdict on any of a number of grounds," and if conviction on a particular ground "would violate the Constitution," the conviction must be reversed even if it could

have rested on a "severable and constitutional" ground. *Bachellar v. Maryland,* 397 U.S. 564, 569-70 (1970).

Conceding that the evidence was sufficient to support a disorderly conduct conviction on either subsection (a)(1) or (a)(2) of the statute, the question remains whether a conviction pursuant to (a)(3) would violate the First Amendment. That subsection prohibits a person "in a public place" from using "abusive or obscene language," or making "an obscene gesture, in a manner likely to provoke a violent or disorderly response." In response to Mr. Bailey's charge that subsection (a)(3) is facially overbroad, the majority correctly holds that it must be construed as prohibiting only "fighting words" as that concept has been developed by decisions of the U.S. Supreme Court. As the Supreme Judicial Court of Maine has observed, "[a] narrow judicial interpretation of criminal statutes affecting speech is necessary in order to insure that they prohibit only speech which is not constitutionally protected." *State v. John W.,* 418 A.2d 1097, 1101 (Me. 1980). So construed, § 5-71-207(a)(3) survives Mr. Bailey's facial-overbreadth challenge. Therefore, a conviction based on subsection (a)(3) would not be unconstitutional on account of overbreadth.

A conviction for disorderly conduct based upon § 5-71-207(a)(3) would, however, rest on "an unconstitutional ground," *Bachellar v. Maryland,* 397 U.S. at 571, if that subsection, "as applied" to Mr. Bailey, punished him for engaging in speech short of "fighting words." None of Mr. Bailey's speech falls into that category. Therefore, if the jury convicted Mr. Bailey for disorderly conduct pursuant to § 5-71-207(a)(3), it necessarily convicted him for engaging in speech protected by the First Amendment.

The Supreme Court has directed that, "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1038 (1991) (citations omitted).

> The "requirement of independent appellate review . . . is a rule of federal constitutional law." . . . . This obligation rests upon us

> simply because the reaches of the First Amendment are ultimately defined by the facts it is held to embrace, and we must thus decide for ourselves whether a given course of conduct falls on the near or far side of the line of constitutional protection.

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557, 567 (1995)(citations omitted). *See also Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987)("The ultimate issue—whether the speech is protected—is a question of law"); *Bachellar v. Maryland*, 397 U.S. at 566-67 (concluding, upon "independent examination of the whole record," that wording on petitioners' placards was not "fighting words"). We have followed this rule in resolving First Amendment issues raised in defamation cases. *See, e.g., Thomson Newspaper Publishing, Inc. v. Coody*, 320 Ark. 455, 461, 896 S.W.2d 897, 901 (1995).

A review of the "whole record" in this case shows that Mr. Bailey did not utter any "fighting words" that could have subjected him to punishment under § 5-71-207(a)(3) consistently with the First Amendment. "Fighting words" are words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). Such language, in order to fall outside the protection of the First Amendment, must "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed," *Gooding v. Wilson*, 405 U.S. 518, 524 (1972), and it must produce a likelihood "that the person addressed would make an *immediate* violent response." *Id.* at 528 (emphasis added). The Supreme Court has "consistently construed the 'fighting words' exception set forth in *Chaplinsky* narrowly." *R.A.V. v. St. Paul*, 505 U.S. 377, 428 (1992)(Stevens, J., concurring in judgment). *See also Diehl v. State*, 451 A.2d 115, 120 (Md. 1982)("Later decisions following *Chaplinksy* indicate the Supreme Court's desire to limit the broad implications of the doctrine and to recognize that the use of an offensive expletive does not, by itself, deprive speech of protection"); 4 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 20.40, at p. 246 (2d ed. 1992)(stating Supreme Court "does not look with favor on prosecutions for 'fighting words'").

The majority opinion adequately conveys the abusive and offensive quality of the words used by Mr. Bailey in addressing Trooper Newton and Officers Geater and Randle. After listing some of the expletives, the majority concludes that Mr. Bailey "direct[ed] various fighting words to the officers" and that, when considered together with "his surrounding conduct, such as standing up and grabbing . . . Officer Randle's arm," Mr. Bailey employed speech "in [a] manner likely to provoke a violent or disorderly response" (quoting § 5-71-207(a)(3)).

As "[t]he context of the utterance must first be examined to determine whether the words are truly 'fighting words,'" *People v. Prisinzano,* 170 Misc.2d 525, 648 N.Y.S.2d 267, 273 (N.Y. City Crim.Ct. 1996); *see also R.A.V. v. St. Paul,* 505 U.S. at 432 (Stevens, J., concurring)("Whether words are fighting words is determined in part by their context"), it is appropriate to review, as the majority opinion does, the words spoken by Mr. Bailey together with any accompanying physical movement. The key principle, however, is that fighting words "are punishable now not on a 'per se' basis but only when there is a likelihood of imminent disturbance." *Downs v. State,* 278 Md. 610, 366 A.2d 41, 44 (1976).

Mr. Bailey's speech did not include any "inherently" inflammatory words. For years, courts have observed that the "fighting words" doctrine has evolved to the point that we no longer have *per se* "fighting words." *See, e.g., R.I.T. v. State,* 675 So.2d 97, 99 (Ala.Cr.App. 1995)("Words must be evaluated in the era in which they are uttered—words that constitute fighting words change from generation to generation, or even more quickly"). Depending on all of the circumstances, what may be a fighting word in one case may not be one in the next.

In *Cohen v. California,* 403 U.S. 15 (1971), the Supreme Court held that the defendant had not used "fighting words" when he wore a jacket in a courthouse hallway with the inscription "Fuck the Draft" on the back. The Maryland Court of Appeals once observed that "the use of the word 'fuck' is not punishable in the absence of compelling reasons." *Diehl v. State,* 451 A.2d at 122. Other cases are in accord. *See, e.g., R.I.T. v. State,*

*supra* (juvenile's statement, "fuck you," to officer held not to be fighting words); *State v. Creasy*, 885 S.W.2d 829 (Tenn.Cr.App. 1994)(statement to officer that he was a "s—t-b—l," "m—— f——," and "s— of a b——" held not to be fighting words); *Robinson v. State*, 615 So.2d 112 (Ala.Cr.App. 1992)(statement to Officer Lewis, "Fuck R. Lewis," held not to be fighting words); *Buffkins v. City of Omaha*, 922 F.2d 465 (8th Cir. 1990)(various uses of word "asshole," when directed to officer, held not to be fighting words); *In re Welfare of S.L.J.*, 263 N.W.2d 412 (Minn. 1978)("fuck you pigs" to officers held not to be fighting words).

Even racial slurs are not "automatically" to be viewed as fighting words. In *Downs v. State, supra,* the defendant, while sitting in a restaurant within earshot of a uniformed State Trooper and a racially mixed clientele, remarked to his companions in a loud voice, "All the goddamn policemen in this County are no fucking good, they're just after me. [T]he fucking niggers in this County are no better than goddamn policemen." 366 A.2d at 42. The Court of Appeals of Maryland reversed the defendant's conviction for disorderly conduct and held that the defendant's speech could not be constitutionally punished as "fighting words." The Court noted that, even if others in the restaurant had been "offended" by the speech, "there was no evidence that any person was so aroused as to respond in a violent manner." 366 A.2d at 46.

Mr. Bailey used almost every expletive imaginable at his residence and at the station following his arrest, but the record is devoid of any testimony that the officers, or anyone else who might have been present at either scene, were likely to respond with immediate violence.

While at Mr. Bailey's residence, the officers responded to his remarks by requesting him to be quiet and allow them to conduct their investigation. The officers never suggested in their testimony that Mr. Bailey's tirade incited, or was even likely to incite, them to violence. Even when Mr. Bailey grabbed Officer Randle's arm, the officer responded not with violence but by instructing Mr. Bailey "to sit down and be quiet," a directive with which Mr.

Bailey immediately complied. Mr. Bailey was not arrested in response to his physical movement against Officer Randle. Rather, it was Mr. Bailey's continuous use of profanity, in spite of the officers' request to be quiet, that prompted Officer Geater to arrest Mr. Bailey for disorderly conduct.

Mr. Bailey also used profanity at the police station, but, again, there is no testimony to suggest that his speech tended to incite potential listeners to respond immediately with violence. To the contrary, the record shows that the officers were amused by Mr. Bailey's invective.

In addition, nothing in the record suggests that Mr. Bailey was closely situated to the officers during his verbal assault. Courts have held that speech cannot be classified as "fighting words" unless the defendant and the person he or she is addressing are closely situated to one another and are essentially "face to face." *People v. Prisinzano,* 648 N.Y.S.2d at 272 and 274 n.3 (stating "the courts which have examined the face-to-face requirement have interpreted it as calling for extremely close physical proximity")(citing *Hershfield v. Commonwealth,* 14 Va.App. 381, 383-385, 417 S.E.2d 876, 878 (1992); *Garvey v. State,* 537 S.W.2d 709, 711 (Tenn.Crim.App. 1975)). As the Supreme Judicial Court of Maine has observed, "'fighting words' implies a direct, face-to-face confrontation and provocation . . . ." *State v. John W.,* 418 A.2d at 1105-06.

Mr. Bailey's arrest occurred as he was addressing the officers, located on the street, from the steps of his front porch. No evidence suggests that there was a face-to-face encounter.

Finally, it is important to consider the people to whom Mr. Bailey directed his remarks — police officers. As Justice Powell suggested in his concurring opinions in *Lewis v. City of New Orleans,* 408 U.S. 913 (1972)(*"Lewis I"*), and 415 U.S. 130 (1974)(*"Lewis II"*), "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Lewis II,* 415 U.S. at 135 (Powell, J., concurring). Jus-

tice Powell's opinion was quoted favorably by the Supreme Court more recently in *Houston v. Hill*, 482 U.S. 451, 462 (1987), and has been approved by the courts of other states, *see State v. John W.*, 418 A.2d at 1104; *City of Toledo v. Grince*, 48 Ohio App.3d 126, 548 N.E.2d 999, 1002 (1989)("It is not unreasonable to expect that a police officer should be able to withstand such insults without retaliating"); as well as by the drafters of the Model Penal Code. *See* AMERICAN LAW INSTITUTE, MODEL PENAL CODE AND COMMENTARIES § 250.2, Comment 7, at pp. 349-53 (1980). Other courts, however, have declined to adopt any rule that would alter the "fighting words" analysis on the basis that the addressee is a police officer. *See, e.g., Commonwealth v. Hock*, 696 A.2d 225 (Pa.Super. 1997). A police officer's background and training are at the very least factors relevant in determining whether speech qualifies as "fighting words."

Law-enforcement officers, while "hard-working" and deserving of "better treatment from members of the public," still must endure a fair amount of speech that is "boorish, crass, and initially, at least, unjustified." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1377 (9th Cir. 1990). Such conduct on the part of an individual is "disgraceful," but "it [is] not illegal; criticism of the police is not a crime." *Id.* (citing *Houston v. Hill, supra*).

Mr. Bailey clearly acted disgracefully toward the officers on the scene, but absent testimony to show that the officers were likely to respond to Mr. Bailey's speech with immediate violence, the First Amendment requires that we reverse the conviction for disorderly conduct.

I respectfully dissent.

IMBER, J., joins in this dissenting opinion.