The Honorable Steve Oliver Prosecuting Attorney 18th Judicial District East 501 Ouachita Avenue Hot Springs, AR 71901
Dear Mr. Oliver:
I am writing in response to your request for my opinion regarding the legality of circulating in Garland County a weekly flier entitled StoneCold Lock Report. Along with a sample of this flier, you have provided me with the following background information:
 Mr. Ron Hitesman, the City Manager for distribution of The Daily Racing Form, has been contacted to distribute the Stone Cold Lock Report in this county. He has asked my office if this "tip sheet" is legal.
 In reviewing A.C.A. § 5-66-114, Sports of games — Transmission of information, there appears to be some ambiguity as to whether this "tip sheet" would be considered as" newspapers disseminating such information as news, entertainment, or advertising medium." Mr. Hitesman has assured me that there is no way to bet on the teams through the paper, and, therefore, there are no prizes to be won. The cost of the paper is $6.00.
Given this background, I have paraphrased your question as follows:
 In light of the provisions of A.C.A. § 5-66-114, could The Daily Racing Form distribute the attached Stone Cold Lock Report (a tip sheet) in Garland County without violating any Arkansas laws?
RESPONSE
In my opinion, the answer to your question is, in all likelihood, "no."
Section 5-66-114 of the Code provides in pertinent part:
 (a) It shall be unlawful for any person, partnership, or corporation to receive or transmit information in the State of Arkansas relating to football, baseball, basketball, hockey, polo, tennis, horse racing, boxing, or any other sport or game for the purpose of gaming.[1]
 (1) This section shall not apply to radio stations or newspapers disseminating such information as news, entertainment, or advertising medium.
This statute must be read in conjunction with A.C.A. § 5-66-101, captioned "Construction of statutes," which provides:
 The judges of the several courts in this state shall, in their construction of the statutes prohibiting gaming, construe the same liberally, with a view of preventing persons from evading the penalty of the law by changing of the name or the invention of new names or devices that now are, or may hereafter be, brought into practice, in any and in all kinds of gaming, and all general terms of descriptions shall be so construed as to have effect, and include all such games and devices as are not specially named; and in all cases, when construction is necessary, it shall be in favor of the prohibition and against the offender.[2]
The issue of the Stone Cold Lock Report you have provided is a tip sheet that analyzes various upcoming college and professional football games, reports the" point spreads" and predicts scores. In my opinion, the publication is obviously designed to inform those intending to bet on football games. Accordingly, I believe that to disseminate this publication would clearly be "to receive or transmit information in the State of Arkansas relating to football . . . for the purpose of gaming." A.C.A. § 5-66-114(a).
However, as you acknowledge, the question remains whether the Stone ColdLock Report disseminates this information "as news, entertainment, or advertising medium," in which case subsection (a)(1), doubtless in recognition of First Amendment mandates, would authorize its distribution. In my opinion, a finder of fact would probably answer this question in the negative. I believe the term "as" in the passage just quoted must be read to mean "acting in the role of" — i.e., for the constitutionally permissible" purpose of" disseminating news, entertainment or advertising, as distinct from "the purpose of gaming." Based on my review, the highly priced Stone Cold Lock Report, although doubtless entertaining to some in its predictions, is clearly designed to facilitate gambling and as such falls within the statutory proscription — a conclusion I believe is particularly warranted under the liberal standard for finding violations set forth at A.C.A. § 5-66-101.
My opinion in this matter follows in part from the ruling in Allbrightv. Muncrief, 206 Ark. 319, 176 S.W.2d 426 (1944), in which the Supreme Court classified as unlawful gaming devices teletype machines knowingly used to furnish horse-racing information to gambling houses.[3] InBostic v. City Of Little Rock, 241 Ark. 671, 674, 409 S.W.2d 825 (1966), the court offered the following summary of its previous holding:
 In Albright v. Muncrief, 206 Ark. 319, 176 S.W.2d 426, we held that teletype machines, operated for the purpose of securing information as to horseracing at different tracks in the United States, the information received then being transmitted to other places in the city where gambling was carried on, became gambling devices within the meaning of our statutes. Of course, a Teletype machine is not a gambling device, per se, but it was the use employed which brought the machines within the prohibitory statute. In that case, we said:
 "It seems to us that the evil effects flowing from the use of instrumentalities designed for lawful use, when put to an unlawful use, would be just as great as when such machines were designed for unlawful purposes. Our lawmakers have gone far in their attempt to suppress the gambling evil and in so doing have given our enforcement officers authority to destroy the tools by the use of which gambling is carried on."
Intuitively, I see little difference between information communicated by Teletype for the purpose of gaming and the same information communicated by an expensive flier devoted exclusively to the subject.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The term "gaming" is defined by implication at A.C.A. § 5-66-104, which addresses "any game of chance, or at which any money or property may be won or lost." In my opinion, betting on sporting events is clearly a variety of gaming.
[2] In State v. Torres, 309 Ark. 422, 831 S.W.2d 903 (1992), the court declined to reach a constitutional objection that this statute is in derogation of the general principle that penal statutes are to be strictly construed. Accord McDougal v. State, 324 Ark. 354,922 S.W.2d 323 (1996).
[3] The court's opinion in Allbright predated the adoption of Ark. Const. amend. 46 and the enactment of the law currently codified as A.C.A. § 23-110-301, which legalized franchised horse racing in Arkansas. In light of these provisions of law, nothing precludes distribution of The Daily Racing Form.