Brian John WHITE *v.* STATE of Arkansas

CR 96-955 958 S.W.2d 519

Supreme Court of Arkansas
Opinion delivered December 18, 1997
[Petition for rehearing denied January 22, 1998.]

*Sam Sexton III*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal arises out of the conviction of appellant, Brian White, for the offense of sexual abuse in the first degree. White received a sentence of eighteen years. He raises multiple points on appeal, none of which has merit. We affirm.

On June 29, 1994, White allegedly had sexual intercourse with a 12-year-old female, NE. The incident was reported to the police on July 9, 1994. At the time, White was on probation due to pleas of guilty that were deferred under Act 346 of 1975, the First Offenders Act.

At trial, the evidence presented by the State consisted primarily of the testimony of the victim together with medical and physical evidence. The victim testified that on the date in question, White, who was the uncle of the victim, was sent to pick up the victim and another minor, Rachel White, who was the 12-year-old aunt of the victim.[1] According to the testimony, White and his girlfriend, Barbara Frazee, took the two girls back to his apartment where they offered the girls alcohol and marijuana,

---

[1] Though the age of both the victim and Rachel White was 12, Rachel White was indeed the aunt of the victim.

which the girls accepted. The victim testified that she went to sleep in White's bedroom and awoke to find White fondling her. White, she stated, eventually had sexual intercourse with her against her will. Although neither of them actually witnessed the alleged rape, the testimony of Rachel White and Barbara Frazee confirmed certain aspects of the victim's testimony.

The prosecutor also presented physical evidence of the crime. Several items of clothing, including the underwear that the victim claimed to have been wearing that night, were introduced into evidence. These clothing articles were collected by Rogers Police Detective Gary Armstrong and sent to the State Crime Lab for testing. The prosecutor also presented the testimony of two technologists who conducted tests to determine if White and the victim suffered from any sexually transmitted diseases. The tests showed that both the victim and White had chlamydia on July 11 and 12, 1994, respectively. A pharmacist also testified that White had purchased an antibiotic on July 17, 1994, which could be used to cure chlamydia.

## I. Discovery Delay

For his first issue White protests the refusal of the trial court to allow the jury to be informed or, alternatively, to instruct the jury that the prosecutor did not turn over the test results on the victim's underwear and hairs found in the underwear conducted by the State Crime Lab until the day before the trial. The test results had been sent to the Rogers Police Department on May 26, 1995. In spite of White's motion to compel discovery filed on January 23, 1995, White had not been told about the tests. The defense moved to exclude the evidence. Recognizing that a violation of Ark. R. Crim. P. 17.1 had occurred, the trial court offered the defense a continuance to allow time to examine the evidence and to have tests performed pursuant to Ark. R. Crim. P. 19.7. White declined and insisted that the trial proceed. The test results were admitted as part of the State's case.

During the trial, White's counsel first tried to cross-examine Detective Gary Armstrong on the failure of the prosecutor to make the Crime Lab report available to him until just before trial.

The trial court ultimately refused to allow defense counsel to inquire into the matter and also refused to instruct the jury on when the defense received the test results. Then, during closing arguments, defense counsel argued to the jury that the reason the prosecutor had not performed DNA tests on hairs found in the victim's underwear was that the State knew White was innocent. The prosecutor responded in his rebuttal argument that White could have performed his own tests, and White's counsel objected based on the fact that the defense did not have time to perform any tests.

The trial court ruled that White had an opportunity to do his own tests and, in effect waived his right to argue that he did not have sufficient time to perform tests on the underwear or the hairs. We agree. The trial court's choice of remedy under Ark. R. Crim. P. 19.7 will not be disturbed absent an abuse of discretion. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). In *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302(1996), this court addressed a situation where the State failed to disclose a witness before trial:

> [A] failure to disclose that information will not warrant a reversal of a conviction absent a showing of prejudice. *Alford v. State*, 291 Ark. 243, 724 S.W.2d 151 (1987); *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986). When the State fails to provide the information, the burden is on the appellant to show that the omission was sufficient to undermine the confidence in the outcome of the trial. *Bray v. State*, 322 Ark. 178, 908 S.W.2d 88 (1995). Prejudice, though, does not exist when the defendant already has access to the information that the State did not disclose. *See Johninson v. State*, 317 Ark. 431, 878 S.W.2d 727 (1994).

*Esmeyer*, 325 Ark. at 499, 930 S.W.2d at 307.

Here, White has been unable to show that the discovery violation resulted in any prejudice because he was offered a continuance to correct any potential prejudice. White argues that the offer of continuance was unacceptable because accepting a continuance would have, in some way, waived his speedy-trial claim. This is simply not true. A continuance charged to the

defendant would have had no effect on any speedy-trial claims that may have existed at that time.

■ ■ Moreover, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Bullock v. State,* 317 Ark. 204, 876 S.W.2d 579 (1994). In the instant case, counsel for the defense invited the State's response in closing argument by implying that the State did not conduct further tests because it knew that White was innocent or because it did not care enough to conduct the tests. The prosecutor's reply that White could have conducted his own tests was warranted and an accurate statement of the situation. There was no misrepresentation by the prosecutor and no abuse of discretion by the trial court in refusing to instruct the jury about the delay in furnishing the test results. *See Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996).

## II. Exclusion of Medical Record

For his next point, White contends that the trial court was in error in not allowing his medical record that he tested negative for chlamydia into evidence. The record in question was the result of a chlamydia test performed on him on July 21, 1994. The record was excluded at trial because the trial court found that a proper foundation had not been laid concerning the chain of custody and the protocol followed in collecting the samples. White argues on appeal, however, that a medical record can come in under the business-record exception to the hearsay rule [Ark. R. Evid. 803(6)], and laying a foundation is not required.

■ We disagree with White's conclusion. The law governing the foundation required for the introduction of evidence and chain of custody is well established:

> Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. *Hubbard v. State,* 306 Ark. 153, 812 S.W.2d 107 (1991). We have consistently agreed that the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with. *Pryor v. State,* 314 Ark. 212, 861

S.W.2d 544 (1993). However, the trial court must be satisfied that, in reasonable probability the evidence has not been tampered with; it is not necessary that the State eliminate every possibility of tampering. (citations omitted).

*Harris v. State*, 322 Ark. 167, 176, 907 S.W.2d 729, 734 (1995).

We conclude that there was no abuse of discretion in the trial court's finding that the testimony presented to establish a foundation for White's independent test was inadequate. Both of the witnesses called by the defense testified that the procedures at the lab were reliable. Yet, neither of the witnesses could testify as to who collected the samples from White and if that person actually followed an established protocol. The sum and substance of the testimony was the trial court could not be assured of how the samples were collected, when they were collected, or even if they were taken from White. Something more must be done to establish the legitimacy of the tests than was done in this case. We have often stated that proof of the chain of custody for interchangeable items like blood must be more conclusive. *See, e.g., Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997). The same would hold true for a swabbed sample taken in connection with a chlamydia test.

Furthermore, we agree with the State that any error caused by the exclusion of the medical record was harmless because the evidence of a test conducted on July 21, 1994, was irrelevant.

Here, the relevant dates, as shown at trial, are as follows:

- ·June 19, 1994 — date of the sexual intercourse.
- July 11, 1994 — the victim tested positive for chlamydia.
- July 12, 1994 — White tested positive for chlamydia.
- July 17, 1994 — White purchased an antibiotic that could cure chlamydia.
- July 21, 1994 — White's independent test allegedly showed that he tested negative for chlamydia.

Dr. Denman, the State's expert in pathology, testified that antibiotics could cure chlamydia in as little as two to three days. White's independent test was conducted on July 21, 1994, four days after

purchasing an antibiotic that could cure chlamydia. The fact that he did not have chlamydia on that particular date shed no light on whether he had chlamydia on July 12, 1994.

### III. Falsification of Evidence — Collateral issue

White next claims that the trial court erred in refusing to allow testimony about a concerted effort to have NE falsify evidence. White and Carol White, his sister-in-law, worked at a pawnshop owned by White's parents. Carol White was also the grandmother of the victim, NE.

During the direct examination of Chris Fisher, defense counsel elicited testimony that the victim told Fisher that she did not have sex with White and that her grandmother, Carol White, was pressing her to pursue charges against White. Defense counsel later called Carol White as his own witness and asked her leading questions about why she encouraged the victim to press false charges. Specifically, defense counsel asked whether Carol White pursued the charges against White (through NE) "to get Brian White out of the picture." She denied this and also denied that the charges were instigated by her to "get even" with White's mother for not giving her the pawn shop. Defense counsel asked Carol White if she had been stealing from the pawn shop where she and White both worked, it being the theory of the defense that Carol White wanted White out of the pawn shop so she could continue stealing. The prosecutor objected to the question on grounds of relevancy and also on grounds that this was a collateral matter. The trial court sustained the objection.

Defense counsel next sought to call Katherine Ann McElroy and Ellen Wadene White (White's mother) to prove that Carol White wanted the pawn shop, was refused it, and found a way to get even with White's mother for not giving the pawn shop to her. The trial court, after objection by the prosecutor, refused the testimony.

■ Our Rules of Evidence provide that extrinsic evidence is not admissible to attack the credibility of a witness. Ark. R. Evid. 608(b). However, if collateral evidence is introduced for the purpose of showing the bias of a witness, it is admissible. *Bowden*

*v. State*, 297 Ark. 160, 761 S.W.2d 148 (1988); *Kellensworth v. State*, 275 Ark. 252, 631 S.W.2d 1 (1982).

■ We view this issue as being whether proof of Carol White's motives for bringing pressure to bear on NE to institute false charges against White is a proper area for development before the jury. We hold that the trial court did not abuse its discretion in ruling as it did. Defense counsel was allowed to question Carol White about her motives. It was only when the issue of her stealing was raised that the questioning was curtailed. At that point, we agree with the trial court that defense counsel was roaming far afield. Nor do we view these circumstances where encouraging false testimony is alleged as falling within the bias exception.

■ With respect to extrinsic evidence to impeach Carol White herself, defense counsel attempted to call two witnesses (Katherine Ann McElroy and Ellen Wadene White) to show that Carol White had lied in her answers about wanting the pawn shop and wanting White out of the shop. To call witnesses to show that Carol White had lied about wanting White out of the pawn shop and that that was a motive for pressuring NE to accuse White falsely seems not only collateral but a confusing and convoluted area to explore before the jury. The trial court did not abuse its discretion in refusing this collateral testimony. *See* Ark. R. Evid. 608(b); *Barnes v. State*, 287 Ark. 297, 698 S.W.2d 504 (1985).

## IV. Prior Felonies

White contends that the trial court erred in allowing the jury to consider during the sentencing phase the fact that he had previously been found guilty of nine other felonies and was, therefore, a habitual offender. The essence of his argument is that he had not been found guilty of the previous crimes because his guilty pleas were withheld or deferred under Act 346 of 1975, the First Offender Act.

The wording of the Habitual Offender Statute is apposite in resolving this issue:

> (a) A previous conviction or *finding of guilt* of a felony may be proved by any evidence that satisfies the trial court beyond a

reasonable doubt that the defendant was convicted or found guilty.

Ark. Code Ann. § 5-4-504 (1987) (emphasis ours). Accordingly, if the trial court is convinced beyond a reasonable doubt that a defendant was found guilty of a felony, this may be considered by the jury in sentencing.

During the sentencing phase, but prior to the trial court's instructing the jury, counsel made their arguments to the trial court as to whether the nine Act 346 sentences should be considered by the jury for habitual offender purposes in light of the fact that the convictions were deferred. The trial court found that there was a finding of guilt by the original trial court, following the guilty pleas for habitual-offender purposes.[2] Indeed, in the Order of Probation, the trial court had determined that the guilty pleas were voluntary and that there was a "factual basis" for the pleas. The State, as a result, urges that this meets the finding-of-guilt requirement under § 5-4-504, because the trial court in the instant case ruled that evidence of prior guilt existed beyond a reasonable doubt.

 Though this is the first time that we have confronted this precise issue, we conclude that the trial court's finding of sufficient evidence of prior guilt in this case for habitual-offender purposes was not clearly erroneous. We affirm the trial court on this point as well.

## V. Speedy Trial

For his next point, White contends that his right to a speedy trial under Ark. R. Crim. P. 28.1 was violated. Both parties concede that White was tried more than twelve months after his arrest, and, therefore, the burden is placed on the State to show sufficient excluded periods under Ark. R. Crim. P. 28.3. White was arrested on July 10, 1994, and his trial began on January 22, 1996, for a total of 561 days between arrest and trial.

In meeting its burden, the State lists the following as excluded time periods:

---

[2] The judge was the same person in both instances.

• 14 days — September 19, 1994, to October 3, 1994. Defendant's failure to appear. Agreed to by both parties.
• 14 days — October 3, 1994, to October 17, 1994. Defendant's request.
• 14 days — November 21, 1994, to December 5, 1994. Arraignment order with time charged to defendant.
• 12 days — March 3, 1995, to March 15, 1995. Pre-trial order with time charged to defendant.
• 76 days — March 15, 1995, to May 30, 1995. Pre-trial order continuance granted on motion from defendant.
• 48 days — May 30, 1995, to July 17, 1995. Pre-trial order in which time was allotted to defendant to receive mental evaluation.
• 79 days — July 17, 1995, to October 4, 1995. Pre-trial order with time charged to defendant.
• 83 days — October 25, 1995, to January 16, 1996. Order excluding time due to the unavailability of the victim.

This provides a total of 340 excluded days, which is more than sufficient for the State to comply with Rule 28.

The only time period that White appears to preserve for appeal was the continuance allowed for the unavailability of the victim, NE, to testify. On October 24, 1995, the trial court entered an order granting the State a continuance because the victim was unavailable and the State had shown that it had employed due diligence in an effort to obtain the victim as a witness. The trial court stated in its order that the time would be excluded for speedy-trial purposes. White now argues that the time should not have been excluded for two reasons. First, Ark. R. Crim. P. 28.3 only allows time to be excluded when "evidence" is unavailable and a witness is not evidence. In swift fashion, however, White concedes that this proposition is contrary to our current caselaw. *See Henson v. State*, 38 Ark. App. 155, 832 S.W.2d 269 (1992). *See also Meine v. State*, 309 Ark. 124, 827 S.W.2d 151 (1992).

Secondly, White contends that the time should not be excluded because the witness was, in fact, available. According to White, the only reason the victim was "unavailable" was that she was pregnant and in a drug rehabilitation program in California. The State responds by emphasizing that defense counsel did not ask for a hearing on this precise question until the day of the trial,

almost three months after the order granting the continuance was entered. The trial court refused to revisit its decision that the State had used due diligence to obtain the witness for trial. The trial court correctly applied the due diligence standard. *Meine v. State, supra.* Hence, there was no abuse of discretion on the part of the trial court in excluding the time attributed to the unavailability of NE.

## VI. Inappropriate Testimony

Two comments by witnesses denied him a fair trial, according to White. During her direct testimony, VW, who was 16 years old, testified about her sexual relationship with White when she was 12. She testified that at one point White asked her to convince the victim, NE, to go out for the night and rent a room with him. The State asked the witness what she thought when White asked her to do that. She replied: "He was crazy." White's counsel objected, and the trial court overruled the objection. White contends that the trial court's failure to instruct the jury to disregard the statement constitutes reversible error because the witness was not qualified to give an opinion on his mental state.

We disagree. There is no indication that allowing the testimony of VW without an admonition was an abuse of the trial court's discretion. *See Nooner v. State, supra.* There are many things that the witness could have meant by her statement. A conclusion by a teenager that White was "crazy" falls more readily into the category of a non-technical conclusion than a medical opinion. The trial court was in the best position to determine the context and meaning of the statement, and on this point, we will defer to the trial court's ruling.

White's second issue relates to the direct examination of Rachel White, who testified that after charges were filed against White, his parents evicted her from a house they owned. The prosecutor asked her if she knew why she was evicted by White's father. She replied: "Because his son raped my niece." White objected and asked for a declaration of a mistrial. The motion was denied. White then asked the trial court to admonish the jury to disregard the statement, which the trial court did. White now

contends that the statement by Rachel was so prejudicial that only a mistrial could have remedied the prejudice.

■ ■ We have often stated that a mistrial is such an extreme remedy that it should not be declared unless there has been error "so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected." *See, e.g., Puckett v. State,* 324 Ark. 81, 89, 918 S.W.2d. 707, 711 (1996). A trial court's discretion to grant or deny a mistrial will not be disturbed absent a showing of an abuse of discretion, and a motion for declaration of a mistrial should only be granted when an admonition to the jury would be ineffective. *Id.* We have also held that an admonition can cure any possible prejudice resulting from prosecutorial misconduct. *See, e.g., Sullinger v. State,* 310 Ark. 690, 840 S.W.2d 797 (1992); *Porter v. State,* 308 Ark. 137, 823 S.W.2d 846 (1992).

■ We conclude that the prosecutor did not ask the question in bad faith. But even if the prosecutor's question was inappropriate, the trial court's admonishment cured any semblance of prejudice. There was no abuse of discretion in denying the mistrial motion.

Affirmed.

CORBIN, J., not participating.