# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 13, 2016 Session

## STATE OF TENNESSEE v. AMANDA L. IRWIN

**Appeal from the Circuit Court for Coffee County**
**No. 41206M  L. Craig Johnson, Judge**
_____

**No. M2016-00219-CCA-R3-CD – Filed November 8, 2016**
_____

Amanda L. Irwin ("the Defendant") pled guilty to driving under the influence and possession of an open container of an alcoholic beverage, reserving two certified questions of law challenging the trial court's denial of a motion to suppress. On appeal, the Defendant asserts that the law enforcement officer lacked reasonable suspicion to ask her to step out of her car and perform field sobriety tests. After a review of the record and applicable law, we affirm the trial court's denial of the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

James H. Threet, III, Manchester, Tennessee, for the appellant, Amanda L. Irwin.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Craig Northcott, District Attorney General; and Marcus Simmons, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

*Motion to Suppress*

On June 12, 2014, the Defendant was indicted by the Coffee County Grand Jury for first offense driving under the influence of an intoxicant ("DUI"); driving with a blood alcohol content of 0.08% or higher; driving with a revoked license, second offense;

operating a motor vehicle while in possession of an open container of alcohol; driving without proof of registration; and driving without proof of insurance. Thereafter, the Defendant filed a motion to suppress the evidence against her, arguing that she was subject to a "warrantless seizure."

At the suppression hearing, Trooper Jason Boles with the Tennessee Highway Patrol testified that around 6 a.m. on October 13, 2013, he was off-duty when he arrived at Sonic restaurant in Manchester for breakfast. The restaurant was not yet open. Trooper Boles noticed a car that appeared to have entered the Sonic from the exit and had pulled into a parking space from the wrong direction. As Trooper Boles passed the irregularly-parked car, he saw that the driver "leaned up in her seat and looked to the right and looked to the left like she was just unsteady and fell straight back in her seat, like she just passed out right there." Concerned that the driver might be intoxicated, Trooper Boles called an on-duty trooper to inform him of a possible DUI at Sonic.

Trooper Donnie Clark was on duty that morning and responded to Trooper Boles's call. When he arrived at Sonic, he circled the restaurant and parked perpendicular to the irregularly-parked car so as to not block in the vehicle. He did not activate his blue lights. Trooper Clark exited his patrol car, and as he approached the parked vehicle, the driver, who was later identified as the Defendant, opened her car door. On the audio of the dash camera video,[1] Trooper Clark could be heard to say, "Howdy. How are you? How much did you have to drink last night?" The Defendant's response is unintelligible, but Trooper Clark testified at the suppression hearing that the Defendant stated that she had been drinking.

Trooper Clark also testified that the Defendant "appear[ed] to be somewhat intoxicated," that he smelled alcohol on the Defendant's person when he spoke with her, and that her speech was slurred. After the Defendant informed Trooper Clark that she had been drinking, Trooper Clark asked the Defendant to exit her vehicle and to perform three field sobriety tests. The Defendant complied and performed the walk-and-turn, one-leg-stand, and finger-to-nose tests. Trooper Clark testified that the Defendant performed "poorly" on the tests, and he arrested the Defendant for DUI.

On cross-examination, Trooper Clark stated that, when he pulled up near the Defendant's car in the Sonic parking lot, the Defendant was not breaking any traffic laws. He also stated that Trooper Boles did not indicate that the Defendant was in physical distress. However, Trooper Clark said that Trooper Boles informed him that the

---

[1] The State introduced and played the dash camera video from Trooper Clark's patrol car at the suppression hearing.

Defendant "sat up and then fell back in her seat," so Trooper Clark did not know if the Defendant was having medical problems when he approached the Defendant's car. Trooper Clark testified that Trooper Boles did not relay any information or evidence that the Defendant had been in a car accident or had damaged anything. Additionally, Trooper Clark stated that neither he nor Trooper Boles personally witnessed the Defendant drive her car.

Trooper Clark noted that the Defendant opened her car door as he approached her car and that he did not speak to the Defendant before she opened her car door. Trooper Clark also stated that the Defendant was not pulled over the curb and that she had successfully parked between posts marking the parking space in the Sonic parking lot. Trooper Clark testified that the keys to the Defendant's car were "readily available" and were inside the vehicle, but he could not remember whether the keys were in the ignition when he spoke with the Defendant.

At the conclusion of the hearing, the trial court found that Trooper Clark's initial encounter with the Defendant was not a consensual encounter because "[t]he [D]efendant did not seek out nor walk by Trooper Clark." However, the trial court found that the initial encounter was a "brief investigatory stop based on reasonable suspicion" because Trooper Clark had been informed of the possible DUI by Trooper Boles, who was a trustworthy "citizen informant." The trial court concluded that Trooper Clark had reasonable suspicion that the Defendant had committed a crime "based on the observations of the caller, the observations of the actual park[ing lot], and the appearance that the vehicle came in the wrong way in a one-way alley in a parking lot . . . ." Additionally, the trial court found that Trooper Clark had probable cause to arrest the Defendant for DUI. The trial court denied the Defendant's motion to suppress.

On January 6, 2016, the Defendant pled guilty to one count of DUI (first offense), a Class A misdemeanor, and one count of operating a motor vehicle with an open container of alcohol, a Class C misdemeanor, and reserved the following certified questions of law:

1. Whether Trooper Donnie Clark's initial encounter with [the Defendant] was a brief consensual encounter that required no objective justification, which later evolved into a brief investigatory stop that was based upon Trooper Clark's articulable and reasonable suspicion that a crime had been committed?

2. If Trooper Clark's initial encounter with [the Defendant] was not a brief consensual encounter, whether the stop and detention of [the Defendant] was supported by reasonable suspicion and lawful under

the [Fourth] Amendment of the U.S. Constitution and Art. 1 Sec[.] 7 of the [Tennessee] Constitution?

In its Judgment Order Reserving Certified Question of Law ("Judgment Order") filed the same day, the trial court found that "[t]he questions certified to the Court of Criminal Appeals are dispositive of the case[]" and that the certified questions "arose from a suppression hearing that was held on December 17, 2014, . . . the transcript[] of which is part of the trial court record."

The Defendant's remaining charges — driving on a revoked license, second offense; driving without proof of registration; and driving without proof of insurance — were dismissed. The trial court sentenced the Defendant to eleven months and twenty-nine days for the DUI charge and ordered the Defendant to pay a $10 fine for the open container charge. The trial court ordered the Defendant to serve forty-eight hours of the DUI sentence, with the remainder of the sentence suspended to supervised probation. This timely appeal follows.

## II. Analysis

### Certified Questions of Law

Tennessee Rule of Criminal Procedure 37 states that a defendant may appeal a judgment of conviction after a guilty plea if:

(A) the defendant entered into a plea agreement under Rule 11(c) but explicitly reserved-with the consent of the state and of the court-the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

- 4 -

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

The defendant has the burden of ensuring that the "prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified." State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). If the certified question is not dispositive of the case, the appeal must be dismissed. Id. at 651.

A certified question is dispositive "when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges]." State v. Dailey, 235 S.W.3d 131, 134 (Tenn. 2007) (quoting State v. Walton, 41 S.W.3d 75, 96 (Tenn. 2001)) (alterations in original) (internal quotation marks omitted). However, this court "is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case." Id. (quoting State v. Thompson, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). We must "make an independent determination that the certified question is dispositive." Id. (citing Preston, 759 S.W.2d at 651).

We conclude that the Defendant properly certified two questions of law to this court. The record shows that the Defendant entered a plea agreement on January 6, 2016, and the Defendant explicitly reserved the right to appeal two questions of law.[2] The trial court filed the Judgment Order on January 6, 2016, and the Defendant filed her Notice of Appeal on January 26, 2016; therefore, the Judgment Order reserving the certified questions was filed before the notice of appeal in this case. Additionally, the Judgment Order contained statements of the two certified questions of law that the Defendant reserved for our review.

The questions of law reserved by the Defendant clearly identify the "scope and limits of the legal issue[s] reserved." Tenn. R. Crim. P. 37(b)(A)(ii). Moreover, the certified questions were reserved with the consent of the State and the trial court. Lastly, the Judgment Order reflects that the trial court, the State, and the Defendant agree that the two certified questions reserved by the Defendant are dispositive of her case. Upon review, we likewise conclude that the certified questions are dispositive of the case.

---

[2] We note that while the plain language of Rule 37 refers to a "question of law," this court has previously considered multiple certified questions of law arising from a defendant's guilty plea. See, e.g. State v. William Gary Mosley, No. M2014-02533-CCA-R3-CD, 2016 WL 309837, at *4-5 (Tenn. Crim. App. Jan. 26, 2016), no perm. app. filed.

After answering the two certified questions, this court must either affirm the Defendant's convictions or reverse the trial court's order and dismiss the charges against the Defendant. Because we hold the Defendant properly certified two questions of law to this court that are dispositive of the case, we will proceed to analyze the merits of the certified questions.

*Standard of Review*

The applicable standard of review for suppression issues is well-established. A trial court's findings of fact are binding on this court unless the evidence in the record preponderates against them. State v. Echols, 382 S.W.3d 266, 277 (Tenn. 2012) (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing and all reasonable and legitimate inferences that may be drawn therefrom. Id. The trial court's application of law to the facts is reviewed under a de novo standard with no presumption of correctness. Id. (citing State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001)).

*Consensual Police-Citizen Encounters*

The Defendant argues that the initial encounter between Trooper Clark and herself was not consensual.[3] The State contends that the initial encounter between Trooper Clark and the Defendant was consensual.

The United States and Tennessee constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). It is well-settled that courts have divided police-citizen encounters into three different categories: "(1) a full scale arrest which must be supported by probable cause . . . ; (2) a brief investigatory detention which must be supported by reasonable suspicion . . . ; and (3) brief police-citizen encounters which require no objective justification . . . ." State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000) (citing Brown v. Illinois, 422 U.S. 590 (1975); Terry v. Ohio, 392 U.S. 1, 20-22 (1968); Florida v. Bostick, 501 U.S. 429, 434 (1991)). Full scale arrests and brief investigatory detentions or stops are seizures and therefore implicate an individual's rights under the Fourth Amendment of the U.S. Constitution and under Article I, Section 7 of the Tennessee Constitution, but a consensual police-citizen encounter does not. See id.

---

[3] The Defendant's appellate brief mentions the trial court's finding that the Defendant's initial encounter with Trooper Clark was not consensual, but the Defendant offers no case law or facts arguing in support of the trial court's finding.

- 6 -

A seizure occurs when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." Id. at 425 (internal citations omitted). "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." Id. (quoting Bostick, 501 U.S. at 440) (internal quotation marks omitted). The factors that a court should consider when determining whether a seizure has occurred include, but are not limited, to "the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen." Id. at 425-26 (internal citations omitted). The Fourth Amendment is implicated when a police officer:

> (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier responded fully to police inquiries; (4) verbally orders a citizen to stop and answer questions; (5) retains a citizen's identification or other property; (6) physically restrains a citizen or blocks the citizen's path; [or] (7) displays a weapon during the encounter.

Id. at 426 (citing 4 Wayne R. LaFave, Search & Seizure, § 9.3 (a), at 104 (3d ed. 1996 & Supp. 1999) (collecting cases)). In the context of a traffic stop, a person is also seized when the officer activates the cruiser's blue lights. Binette, 33 S.W.3d at 218.

In this case, the trial court found that the initial interaction between Trooper Clark and the Defendant was not consensual because Trooper Clark approached the Defendant, and "[t]he [D]efendant did not seek out nor walk by Trooper Clark." However, the Tennessee Supreme Court has previously held that "the Fourth Amendment is *not* implicated and no seizure occurs when police approach an individual, in a public place, or in a parked car, ask questions, and request to search, so long as police do not convey a message that compliance with their requests is required." Daniel, 12 S.W.3d at 426 (footnotes omitted) (emphasis in original).

Here, the trial court erred by finding that the encounter between the Defendant and Trooper Clark was non-consensual on the basis that the Defendant did not approach Trooper Clark. Tennessee law clearly holds that an officer may approach an individual without violating that individual's Fourth Amendment rights. Id. In this case, Trooper Clark parked his car behind the Defendant's car in a way that did not block her in. Trooper Clark then got out of his patrol car and began walking up to the Defendant's car.

- 7 -

Before Trooper Clark reached the Defendant's car, she opened her car door. Trooper Clark then asked the Defendant how she was doing and how much she had had to drink that night. Because Trooper Clark did not block the Defendant's car or activate his emergency lights and because the Defendant opened her car door to speak with Trooper Clark as he approached, we hold that the initial interaction between Trooper Clark and the Defendant was consensual.

*Reasonable Suspicion*

The Defendant further argues that Trooper Clark lacked reasonable suspicion that she had committed a crime when Trooper Clark asked the Defendant to step out of her car and perform field sobriety tests. The State contends that Trooper Clark had reasonable suspicion that the Defendant had been driving under the influence based on Trooper Boles's information and Trooper Clark's observations of the Defendant's parked car.

Generally, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 525, 629 (Tenn. 1997). A warrant is not required for an investigatory stop "when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997); see also Terry, 392 U.S. at 21; Binette, 33 S.W.3d at 218; Yeargan, 958 S.W.2d at 630; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity . . . , and it is determined by considering the totality of the circumstances surrounding the stop[.]" Binette, 33 S.W.3d at 218 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996); Alabama v. White, 496 U.S. 325, 330 (1990)).

> Circumstances relevant to [evaluating reasonable suspicion] include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him.

Yeargan, 958 S.W.2d at 632 (citing Watkins, 827 S.W.2d at 294; United States v. Cortez, 449 U.S. 411, 418 (1981); Terry, 392 U.S. at 21).

In the current case, Trooper Clark had reasonable suspicion that the Defendant was in physical control of a motor vehicle in the Sonic parking lot while under the influence of alcohol. Trooper Boles was a citizen informant who was found reliable by the trial court. He informed Trooper Clark that the Defendant's vehicle was irregularly-parked and that he saw her move around and fall back in her car; both of these circumstances suggested to Trooper Boles that the Defendant was intoxicated. When Trooper Clark arrived at Sonic, he also observed that the Defendant had irregularly parked her car in such a way to indicate that she pulled into the parking space from the wrong direction. After Trooper Clark approached the Defendant's car, she opened her door, and Trooper Clark spoke with her. Trooper Clark testified that the Defendant appeared to be intoxicated, that he smelled alcohol on the Defendant's person, that her speech was slurred, and that she admitted to drinking. Trooper Clark's personal observations along with Trooper Boles' observations relayed to Trooper Clark by telephone provided Trooper Clark with reasonable suspicion that the Defendant had been driving while under the influence of alcohol. Therefore, Trooper Clark's "seizure" of the Defendant by asking her to exit her vehicle and perform field sobriety tests was supported by reasonable suspicion. The Defendant is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE