IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2018 Session

## STATE OF TENNESSEE v. BENJAMIN TATE BROWN

**Appeal from the Circuit Court for Rutherford County**
**No. F-76199  David M. Bragg, Judge**

_____

### No. M2017-01150-CCA-R3-CD

_____

The Defendant, Benjamin Tate Brown, was indicted for driving under the influence (DUI), driving while his blood alcohol concentration was .08% or more (DUI per se); and DUI, second offense. Following a bench trial, the Defendant was found guilty of DUI, second offense, and the remaining charges were dismissed. On appeal, the Defendant contends that the trial court erred in not suppressing the evidence because the officer lacked probable cause to stop his vehicle and in finding the offense was a second offense because his convictions were more than ten years apart. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Robert J. Foy, Murfreesboro, Tennessee, for the appellant, Benjamin Tate Brown.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Brent L. Pierce, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was arrested on January 13, 2016, by Tennessee Highway Patrol Trooper Kenneth White for DUI, second offense, and violation of the implied consent law. Trooper White obtained a search warrant to draw the Defendant's blood. After a preliminary hearing, the case was bound over to the grand jury. On September 16, 2016,

the Rutherford County Grand Jury issued a three-count indictment charging the Defendant with DUI, DUI per se, and DUI, second offense.

*Motion to Suppress Hearing*

The Defendant filed a motion to suppress alleging that Trooper White did not have "reasonable suspicion or probable cause, supported by specific and articulable facts, to believe that Defendant had committed, was committing or was about to commit a crime when the stop was made[.]"

A hearing on the motion to suppress was held on February 22, 2017. Trooper White testified that he "observed [the Defendant's] vehicle traveling west on Lasseter Drive that had failed to stop at a posted stop sign at the intersection of Lasseter Drive and Mercury Boulevard." When asked where he was "in relation to that vehicle when [the vehicle] failed to stop," Trooper White answered, "I was actually pulled out on the roadway and was traveling west at the time as he went by me." Trooper White testified that he could clearly see that the Defendant's vehicle failed to stop as it turned right. He said the taillights were on, but the brake lights did not "activate." Trooper White testified that he "proceeded to catch up to [the Defendant's] vehicle . . . , initiated [his] blue lights, and the made contact with the driver[.]"

On cross-examination, Trooper White stated that he reviewed the video and his police report "a couple of different times in the last couple of days." The following dialogue then took place:

> [Trial Counsel:] All right. And in your viewing of the stop video, does the video show . . . [the Defendant] proceeding through the stop sign?
>
> [Trooper White:] If you look at the video, sir, when I pulled out . . . after he went past me on the roadway onto Lasseter Drive, you never once at one time see the brake lights come on the rear of his vehicle.
>
> [Trial Counsel:] Okay. That's not my -- my question is, though, does it show his vehicle the entire time on the video?
>
> [Trooper White:] No, sir.
>
> [Trial Counsel:] What date was the alleged crime? What date did that occur?
>
> [Trooper White:] January 13th, 2016.

[Trial Counsel:]  And what time was that?

[Trooper White:]  1:39 a.m.

[Trial Counsel:]  And prior to the stop of [the Defendant's] vehicle, how long did you observe his vehicle?

[Trooper White:]  Just as he went by me.  And then I immediately noticed that he failed to stop at the posted stop sign and pulled out on it.

[Trial Counsel:]  Where were you sitting when you pulled out?

[Trooper White:]  There is like a little cut-through, a little parking lot back there by Slick Pig.  And I was sitting there at the time.

. . . .

[Trial Counsel:]  Other than from watching the video and reading your report, do you have any specific independent recollection on the stop you made on [the Defendant]?

[Trooper White:]  No, sir.  I mean, other than the fact that I never did cite him for speeding.  I mean, if you look at it, he was speeding as well.

[Trial Counsel:]  And did you -- you didn't place that in the police report?

[Trooper White:]  No, sir, I did not.

. . . .

[Trial Counsel:]  And, again, other than what you saw on the video and other than what you read in your police report, you have no memory of this interaction independent of those -- that document and that video that occurred with [the Defendant] on that evening?

[Trooper White:]  No, sir.  That's correct.

The digital video disc (DVD) showing the stop was entered as Exhibit 1.  The DVD begins with Trooper White's patrol vehicle parked perpendicular to and facing Lasseter Drive with his front-mounted video camera activated.  The Defendant's vehicle

can be seen passing in front of Trooper White's vehicle. Trooper White turned on his headlights and pulled out in a right hand turn lane onto Lasseter Drive. As the front-facing camera turns with the patrol vehicle, the Defendant's vehicle comes into view as it is turning right onto Mercury Boulevard. Trooper White accelerated and overtook the Defendant's vehicle on Mercury Boulevard and activated his blue lights.

Following argument, the trial court accredited "Trooper White's testimony that [the Defendant] failed to come to a complete stop at that stop sign before he turned onto Mercury Boulevard," noting that "the fact that it's not all on the video is not a sufficient basis to discount the Trooper's sworn testimony." The trial court denied the motion to suppress.

*Trial*

On May 16, 2017, a bench trial was held. Trooper White was the only witness called to testify, and his testimony concerning what occurred up to the point he activated his blue lights was consistent with his testimony at the motion hearing.[1] Trooper White identified the Administrative Motor Vehicle Report (MVR) of the Department of Safety and Homeland Security which provided the driving history of the Defendant. The MVR was entered as an exhibit. Under the heading "Conviction or Action Date," the MVR listed "DUI of Alcohol or Drug – 1st" and April 18, 2007. Under the heading "Offense Date," the MVR stated June 4, 2006, and under the "Location/Court," the MVR listed "Wilson County GS Clerk."

Following argument, the trial court found that the Defendant: (1) "was driving and in physical control of an automobile . . . on a public road[,]" (2) "was under the influence of an intoxicant affecting the central nervous system," and (3) "had a prior driving under the influence conviction that was dated April 18, 2007[,] . . . that occurred within the 10 year [time] frame with this offense." The trial court stated that it found the Defendant guilty beyond a reasonable doubt of driving under the influence, second offense.

Following the denial of his motion for new trial, the Defendant timely appealed.

**Analysis**

On appeal, the Defendant claims that the trial court erred in denying his motion to suppress the evidence obtained following a traffic stop and that the trial court erred in

---

[1] Because the Defendant does not raise sufficiency of the evidence to support a conviction of DUI as an issue on appeal and because Trooper White's testimony at trial concerning the stop was consistent with his testimony at the motion hearing, we will only discuss Trooper White's testimony concerning the Defendant's driving history as it relates to his prior conviction of DUI.

finding that the Defendant was guilty of DUI second offense because more than ten years passed from the date of his first DUI conviction until the date of his second conviction.[2] The State argues that the trial court properly denied the motion to suppress and that it is the time between offenses, rather than between convictions, that controls and that the Defendant's present DUI occurred within ten years of the offense date of his prior offense. We agree with the State.

## *Suppression of Evidence*

When reviewing a motion to suppress, this court is bound by the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility, the weight and value of the evidence, and resolutions of conflicts in the evidence are resolved by the trial court. *Id*. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *Id*. We review the trial court's conclusions of law de novo. *State v. Carter*, 160 S.W.3d 526, 531 (Tenn. 2005).

The United States and Tennessee constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. Art. I, § 7; *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). A vehicle stop and detention of the vehicle's occupants constitutes a seizure under both constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Binette*, 33 S.W.3d at 218. In the context of a traffic stop, a person is seized when the officer activates the cruiser's blue lights. *Binette*, 33 S.W.3d at 218. Generally, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 525, 629 (Tenn. 1997). A warrant is not required for an investigatory stop "when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997); *see also Terry v. United States*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218; *Yeargan*, 958 S.W.2d at 630; *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity [], and it is determined by considering the totality of the circumstances surrounding the stop[.]" *Binette*, 33 S.W.3d at 218 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Alabama v. White*, 496

---

[2] The Defendant conceded during oral argument that pursuant Tenn. Code Ann. § 55-10-405(a), which became effective approximately six months before his arrest, it is the ten-year time frame between offenses, rather than between convictions, that controls whether a prior conviction can be used to enhance the punishment for a person convicted of violating Tennessee Code Annotated section 55-10-401. However, because the issue was thoroughly briefed and raised on appeal, we will address the issue.

U.S. 325, 330 (1990)). Probable cause is not required for an investigatory stop. *State v. Coleman*, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989) (citing *Terry*, 392 U.S. at 27; *Hughes v. State*, 588 S.W.2d 296, 305 (Tenn. 1979); *State v. Foote*, 631 S.W.2d 470, 472 (Tenn. Crim. App. 1982)).

In this case, the Defendant correctly argues that Trooper White admitted that he had no "independent recollection" of this particular traffic stop before he reviewed his report and watched the DVD and that the DVD does not show whether the Defendant stopped at the stop sign before the video camera turned sufficiently to see the Defendant's vehicle. However, at the suppression hearing, Trooper White testified that, after reviewing his report and the DVD, he remembered the case and that he visually observed that the Defendant's vehicle failed to stop at a posted stop sign at the intersection of Lasseter Drive and Mercury Boulevard. At trial, Trooper White stated that he had "to go back and watch [the DVD] to kind of refresh [his] memory on what actually . . . occur[ed]." The Defendant cross-examined Trooper White at the suppression hearing and at trial about his report. However, Trooper White was not questioned about anything that may or may not have been in the report concerning the Defendant's failure to stop at the stop sign. The report was not entered as an exhibit at the suppression hearing or at trial. The report is not part of the record on appeal, and we therefore have no way to determine whether the report may have aided Trooper White in refreshing his memory about the facts of this traffic stop.

The trial court found that the fact that the video did not show that the Defendant ran the stop sign was "not a sufficient basis to discount the Trooper's sworn testimony." We agree. Trooper White testified that, after reviewing his report and the video, he recalled observing the Defendant's vehicle fail to come to a stop at the stop sign. The trial court accredited the testimony of Trooper White. Trooper White had "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense ha[d] been [] committed." *Bridges*, 963 S.W.2d at 492. Thus, Trooper White's investigatory stop of the Defendant's vehicle was reasonable, and the Defendant is not entitled to relief on this issue.

### DUI, Second Offense

The Defendant relies on *State v. Conway*, 77 S.W.3d 213 (Tenn. Ct. App. 2001), to support his argument that more than ten years had elapsed between the time of the Defendant's prior DUI conviction and his conviction in this case. At the time *Conway* was decided, Tennessee Code Annotated section 55-10-403(a)(3), which was amended in 1998, provided in pertinent part:

[A] person who is convicted of a violation of Tenn. Code Ann. § 55-10-401 shall not be considered a repeat or multiple offender and subject to the penalties prescribed in subsection (a), if ten (10) or more years have elapsed between such conviction and any immediately preceding conviction for a violation. *If, however, a person has been convicted of a violation of Tenn. Code Ann. § 55-10-401 within ten (10) years of the present violation*, then such person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by the provisions of subsection (a).

Tenn. Code Ann. § 55-10-403(a)(3) (1998) (emphasis added). In *Conway*, this court concluded that the statute was ambiguous, that the former statute "measured the ten-year time period from conviction to conviction without any reference to the date of commission of the offenses[,]" and that there was "no indication [in legislative history] that the legislature intended to amend the statute so as to change the method of calculating the ten-year period." *Id.* at 224.

Tennessee Code Annotated section 55-10-403(a)(3) was amended in 2010 to provide:

[A] person who is convicted of a violation of § 55-10-401 shall not be considered a repeat or multiple offender and subject to the penalties prescribed in subsection (a), if ten (10) or more years have elapsed between the date of the present violation and the date of any immediately preceding violation of § 55-10-401 that resulted in a conviction for such offense. If, however, the date of a person's violation of § 55-10-401 is within ten (10) years of the date of the present violation, then the person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by the provisions of subsection (a).

Tennessee Code Annotated section 55–10–403(a)(3) (2010).

The current statute governing multiple DUI offenders is codified at Tennessee Code Annotated section 55-10-405 and became effective on July 1, 2016, approximately six months before the Defendant's arrest for DUI, second offense. Tennessee Code Annotated section 55-10-405(a) provides in applicable part:

(a) For the sole purpose of enhancing the punishment for a violation a person who is convicted of a violation of § 55-10-401 shall not be considered a repeat or multiple offender and subject to the penalties prescribed in this part if ten (10) or more years have elapsed between the

date of the present violation and the date of any immediately preceding violation of § 55-10-401 that resulted in a conviction for such offense. If, however, the date of a person's violation of § 55-10-401 is within ten (10) years of the date of the present violation, then the person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by this part.

Tenn. Code Ann. § 55-10-405(a) (2016).

According to the MVR, the "Offense Date" for the Defendant's prior DUI was June 4, 2006. The offense date for the DUI in this case was January 13, 2016. Ten or more years had not elapsed between the offense date of the Defendant's prior DUI and the offense date of the Defendant's DUI in this case. The trial court properly found that the Defendant was guilty of a DUI, second offense. The Defendant is not entitled to relief on this issue.

## Conclusion

The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE