IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2019 Session

**STATE OF TENNESSEE v. ROBERT D. CAMERON, III**

**Appeal from the Circuit Court for Rutherford County**
**No. 75CC1-2017-CR-77794        David M. Bragg, Judge**

_____

**No. M2018-01406-CCA-R3-CD**

_____

Following a bench trial, Robert D. Cameron, III, Defendant, was convicted of driving under the influence ("DUI") and DUI per se.  On appeal, Defendant asserts that the trial court erred in denying his Motion to Suppress the video recording of his traffic stop, the blood test results, and the results of his field sobriety tests.  The trial court found reasonable suspicion for the stop and probable cause for the ensuing arrest.  Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

J. Ryan Johnson, Nashville, Tennessee, for the appellant, Robert Duncan Cameron, III.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Brent L. Pierce, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural Background*

On July 13, 2017, the Rutherford County Grand Jury entered a true bill charging Defendant with DUI, DUI per se, and leaving the scene of an accident.  On October 6, 2017, Defendant filed a Motion to Suppress the video recorded from La Vergne Police

Department Officer Kaitlyn Bush's patrol car, the blood test results, and the field sobriety results. The Motion was argued on November 20, 2017.

*Hearing on the Motion to Suppress*

Officer Bush was the only witness at the hearing. The video from Officer Bush's patrol car was introduced without objection as Exhibit 1.

On September 11, 2016, Defendant was involved in a motor vehicle accident while traveling eastbound on Interstate 24. He stopped and exchanged names, addresses, vehicle registration information, insurance information, and driver's license information with the driver of the other vehicle. Officer Bush was dispatched to the accident at 2:48 a.m. She estimated the parties had been at the scene of the accident approximately thirty minutes by the time she arrived. In the video from her patrol car, two cars can be seen parked, one behind the other, on the right hand side of the interstate as Officer Bush's patrol car approached. She activated the blue lights on her patrol car before reaching the scene. The front vehicle can then be seen pulling out onto the interstate and driving away. According to Officer Bush, as she pulled alongside the remaining car where two individuals were standing, she asked if the vehicle that was leaving was involved in the accident. They answered "yes" and pointed toward Defendant's vehicle, which was still visible as he drove away. Officer Bush activated her emergency siren and pursued Defendant, who pulled his vehicle over approximately one-half mile from the accident scene.

Because Officer Bush "had observed [Defendant] leave the scene of an accident" and was "unsure of what [Defendant's] intentions were," she used her patrol car's loudspeaker to order Defendant to exit his vehicle. Defendant approached Officer Bush's patrol car carrying his license and registration in his hand. Officer Bush took Defendant's documents and ordered him to clasp his hands behind his head. Officer Bush placed her hand over Defendant's hands and patted him down. Officer Bush, for the first time, then activated the audio recording equipment to go along with the video recording. When Officer Bush inquired as to why Defendant drove away from the scene, he stated that he had been waiting at the scene for approximately twenty minutes; that the other party had photographed his driver's license, insurance information, and license plate; and that he believed he was free to leave.

Officer Bush testified that she contacted by radio another officer who responded to the accident scene. The officer confirmed that Defendant provided the pertinent information to the other driver but stated that the other driver did not give Defendant permission to leave the scene of the accident. After speaking with the other officer, Officer Bush handcuffed Defendant, telling him that he was being detained pending

- 2 -

further investigation by the highway patrol. The video shows Officer Bush asking Defendant, as she was handcuffing him, if he had anything to drink. Defendant answered that he had three beers over the span of two hours. Officer Bush testified that she first smelled an odor of alcohol while she was handcuffing Defendant.

After other officers began to arrive at the location where Officer Bush had stopped Defendant, Officer Bush read Defendant his *Miranda* rights and administered field sobriety tests. She then placed Defendant under arrest for DUI and leaving the scene of an accident.

Officer Bush stated that Tennessee Highway Patrol Trooper Suggs investigated the accident.[1] At the time Officer Bush stopped Defendant, she did not know if anyone had been injured.

*Trial Court's Oral Findings and Ruling on Motion to Suppress*

At the conclusion of the suppression hearing, the trial court announced the following findings:

> . . . [Officer] Bush arrived at the scene. As she was getting out of her vehicle, the car was pulling away -- or as she actually was stopping her vehicle, the other car was pulling away from the scene of the accident. At that time, she didn't have any idea, one, how much damage occurred. Two, whether or not there [were] any other injuries or anybody injured. And she immediately got back in her car, followed [Defendant].

> As soon as she initiated her emergency lights, [Defendant] can be seen pulling over to the side of the road. At the time of the interaction between [Officer] Bush and [Defendant], he initially was getting some stuff out of his car, leaned his head out the window, got out of his car. She got out of the car.

> During the interaction initially, [Defendant] was very cooperative, perhaps overly so. Because it appears, based on the video, that [Officer] Bush was concerned about [Defendant's] safety, because [Defendant] was moving around quite a bit somewhat close to the highway[,] [s]he directed him on the other side of the car away from the highway at least twice that I can recall based on the video. The video would give actual evidence of what that was.

---

[1] Trooper Suggs first name is not in the record.

- 3 -

At some point out of concern for, one, keeping him present or to conclude the investigation, as well as to maintain his safety, she placed him into handcuffs. At the time she placed him into handcuffs, she smelled alcohol. Certainly she had probable cause at that time to continue an investigation that would eventually lead to his arrest.

. . . .

. . . [Defendant] was seized when he was pulled over with the blue lights and the car was parked. He wasn't free to leave at that time. That's when the seizure occurred. And I find reasonable cause for that seizure based on the fact that he had been pointed out by people who had been involved in an accident as someone who was leaving the scene of an accident prior to the time that any -- that the officer had any opportunity to know how serious the accident was or whether or not there were any injuries.

And certainly that would lead her to be concerned about why the other person was leaving the scene of an accident, whether or not that person was safe to continue driving.

The trial court denied the Motion to Suppress.

*Bench Trial and Appeal*

After waiving his right to trial by jury, Defendant was convicted following a July 2, 2018 bench trial of DUI, DUI per se, and leaving the scene of an accident. On August 1, 2018, Defendant filed his notice of appeal and a Motion to Vacate Judgment. On June 18, 2019, after a stay was issued by this Court, the trial court vacated Defendant's conviction for leaving the scene of an accident finding there was insufficient proof of amount of property damage.

Analysis

On appeal, Defendant claims that the trial court erred in denying the Motion to Suppress because he was unreasonably and unlawfully seized and detained prior to Officer Bush having reasonable suspicion that he was driving under the influence. The State argues that the trial court properly denied the Motion to Suppress. We agree with the State.

When reviewing a motion to suppress, this court is bound by the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *Id.* If the application of the law to undisputed facts is at issue, this court reviews the trial court's conclusions of law de novo without a presumption of correctness. *State v. Brotherton*, 323 S.W.3d 866, 869, (Tenn. 2010).

The United States and Tennessee constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. Art. I, § 7; *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). A vehicle stop and detention of the vehicle's occupants constitutes a seizure under both constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Binette*, 33 S.W.3d at 218. In the context of a traffic stop, a person is seized when the officer activates the cruiser's blue lights. *Binette*, 33 S.W.3d at 218. Generally, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 525, 629 (Tenn. 1997). A warrant is not required for an investigatory stop "when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997); *see also Terry v. United States*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218; *Yeargan*, 958 S.W.2d at 630; *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity [], and it is determined by considering the totality of the circumstances surrounding the stop[.]" *Binette*, 33 S.W.3d at 218 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Alabama v. White*, 496 U.S. 325, 330 (1990)). Probable cause is not required for an investigatory stop. *State v. Coleman*, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989) (citing *Terry*, 392 U.S. at 27; *Hughes v. State*, 588 S.W.2d 296, 305 (Tenn. 1979); *State v. Foote*, 631 S.W.2d 470, 472 (Tenn. Crim. App. 1982)).

Officer Bush was dispatched to the scene of an automobile accident. The video recording shows that as she approached with her blue lights activated, a car leaving the scene of the accident. The individuals standing by the car that remained at the accident scene pointed to and identified the fleeing car as being involved in the accident. These specific and articulable facts provided sufficient reasonable suspicion for Officer Bush to conduct an investigatory stop. We agree with the trial court's finding that Defendant "was seized when he was pulled over with the blue lights and the car was parked." Once Defendant was seized, Officer Bush smelled an odor of alcohol and received confirmation from Defendant that he had been drinking. Officer Bush determined that

Defendant performed unsatisfactorily on the field sobriety tests and placed him under arrest.

We determine that the trial court properly denied the Motion to Suppress based on the totality of the circumstances surrounding the investigatory stop.

**Conclusion**

The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE